Mrs. Frances E. **QUINDLEN**

v.

The **PRUDENTIAL INSURANCE COMPANY OF AMERICA.**

**Civ. A. No. 14123.**

United States District Court, W. D. Louisiana, Shreveport Division.

May 3, 1971.

Supplemental Opinion May 15, 1972.

10

2

H. F. Sockrider, Jr., Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, La., for plaintiff.

Neilson S. Jacobs, Blanchard, Walker, O'Quin & Roberts, Shreveport, La., for defendant.

DAWKINS, Chief Judge.

### RULING

The facts in this diversity action are essentially uncontested.

Stringfellow, an agent of Prudential, visited the apartment of Milton Quindlen, a retired Air Force Officer, and his wife, Frances Quindlen, on August

24, 1967. Mr. Quindlen applied for a $15,000 life insurance policy, completed Part I of the application that day and Part II was completed August 26, after his medical examination. Quindlen paid the first year's premium on the policy applied for, $163.15, by authorizing the withdrawal of dividends accrued to another policy with Prudential. A "pre-payment receipt" for this amount was delivered to Quindlen.

The agent forwarded the forms to Prudential's southwestern home office in Houston, Texas, on or about August 27, 1967. The reviewing underwriter sent a request to the Shreveport District Office for additional information on August 31. The request was prompted by information which was disclosed on the pending application which did not appear on the previous application of June 1965 concerning a slightly elevated blood pressure. The Prudential agent called the Quindlen residence, spoke to Mrs. Quindlen, and inquired if her husband's military medical records were available. Mrs. Quindlen thought the records were in Washington, D. C., or *in transitu,* but in any case they were not accessible. Consequently, Stringfellow had the manager of the Shreveport office write the Houston office, asking whether or not the request for military records could be waived. The underwriting division replied, by way of an intra-company message and reply dated September 19, that the request could not be waived. After renewed demand for the medical records, Agent Stringfellow again called the Quindlen residence and was advised by Mrs. Quindlen that she assumed that the only way to obtain the records would be for the Houston office to write the appropriate authorities in Washington, D. C.

Mrs. Quindlen was asked twice whether she had available the military medical records of her husband. She did not deny that the agent told her the records had to be obtained.[1]

Standard operating procedure in Prudential's Houston office permitted constant review of such applications. On October 3, 1967, Quindlen's file was reviewed and it was ascertained that the medical records had not been furnished. Accordingly, the pre-paid application was rejected.

Mr. Quindlen died on October 5, 1967. The first Prudential agent made aware of Quindlen's death was Stringfellow. The rejection of the insurance application had taken place on October 3, two days before his death, without any knowledge of his condition. On October 6, a form card entitled "Notice of Rejection of Application" was prepared in the Houston office and mailed to the Shreveport office in order that the latter would be informed of the rejection and might so advise the applicant.

■ This Court in deciding diversity cases must apply the law of Louisiana, Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In default of a State Supreme Court decision, we must, "where the State law supplies the rule of decision . . ., ascertain and apply that law even though it has not been expounded by the highest court of the State." Fidelity Union Trust Company v. Field, 311 U.S. 169, 177, 61 S.Ct. 176, 178, 85 L.Ed. 109 (1940).

The issue is whether or not notice of cancellation is a condition precedent for rejection of a temporary life insurance binder. The Insurance Code of Louisiana, LSA–R.S. 22:636, governs cancellation by the insurer of any policy. We have been cited to no decision, nor do we know of one, by any appellate court of this State, or by the State Supreme

---

1. Page 14 of the Transcript:

"THE COURT: Did he use any language to the effect that: 'Mrs. Quindlen, before the policy can be issued, we will have to get the prior medical record while he was in the Service'?

"THE WITNESS: He could have said that, and I believe maybe he did, but I gave him the information I was able to and it was a short period of time after that my husband became very ill and I wasn't able to follow through."

Court, interpreting Subsection E of Section 636.

In early 1967, Prudential agents were authorized to sell insurance on a prepaid plan. The advantage to the insured is obvious—the immediate coverage in the interim between date payment is received and the date the Company either rejects or accepts the application on a prepaid basis. Prudential benefits by this to the extent that it is unlikely that an applicant will forfeit the annual payment in order to apply for a policy from another Company. Undoubtedly, Quindlen considered himself covered from the time he authorized the premium payment to be deducted from the dividends which he was receiving from his other policy with Prudential.

The language of the particular contract over which dispute has arisen reads, in pertinent part:

" . . . NOTWITHSTANDING THE ABOVE PAYMENT NO INSURANCE SHALL TAKE EFFECT OR CONTINUE IN EFFECT EXCEPT AS SPECIFIED IN THIS RECEIPT.

"IF AND ONLY IF PART I OF THE APPLICATION AND PART II OF THE APPLICATION . . . ARE ALL COMPLETED . . . and if and only if the Company has neither rejected the application nor declined to consider it on a prepaid basis, then:

"1. Insurance (Interim term insurance if requested in the application) in accordance with the terms and conditions of the policy applied for shall take effect on the effective date; provided, however, that the aggregate amount payable under this Section 1 shall not exceed $100,000.

\*　　\*　　\*　　\*　　\*　　\*

"Any insurance under (1) above may be terminated by the Company at any time during the proposed Insured's lifetime by rejecting the application.

. . .

\*　　\*　　\*　　\*　　\*　　\*

"If any insurance is terminated . . . the Company's sole liability shall be the return of the above payment."

The provision of the Louisiana Insurance Code dealing with notice is R.S. 22:636:

"A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:

\*　　\*　　\*　　\*　　\*　　\*

"E. This Section shall not apply to temporary life insurance binders nor to contracts of health and accident insurance which do not contain a provision for cancellation prior to the date to which premiums have been paid, nor to the contracts provided in Part XV of this Chapter. Amended and re-enacted Acts 1958, No. 125."

The parties to this suit pose entirely different interpretations of paragraph "E" of Section 636. It falls upon us to determine the meaning of this paragraph which, upon reflection, appears dubious.

■ We conclude that from a grammatical sense the adjectival clause beginning "which do not" modifies not only "contracts of life or health and accident insurance" but also "temporary life insurance binders." The failure of the Legislature to insert a comma after "binders," while using one after "paid," suggests a law-making intent to have the adjectival clause attach to temporary life insurance binders.

■ Moreover, our conclusion is buttressed, in fact impelled, by the over-all scheme of Section 636. Paragraph "A" requires notice of cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer. This rule has three exceptions (the third need not be discussed). Subsection "A" requires notice of cancellation and Subsection "E" clearly excepts contracts

of life or health and accident insurance which do not contain a provision for cancellation prior to the date to which premiums have been paid. If read literally, the second exception would relieve insurance companies of giving notice where the policy contained no provision for cancellation prior to the date to which premiums have been paid. Such a conclusion is nonsensical. The reasonable explanation is that where a policy of life or health and accident insurance is issued but no premium is paid, then the insurance company could cancel without notice.

■ The statutory construction principle requiring restrictive interpretation of exceptions demands that we attach the adjectival clause to temporary life insurance binders. Therefore, failure to pay the premium when a "temporary life insurance" policy is issued obviates notice of cancellation. The consequence of this is to have Subsection "E," in its first and second exceptions, parallel in an exclusory manner, the provisions of Subsection "A."

■ The Prudential Insurance Company's pre-payment receipt read in light of our interpretation of Subsection "E" of Section 636 requires notice as a condition precedent to cancellation of this temporary life insurance binder. This conclusion takes into consideration the conflicting interests of the parties and strikes what the Legislature thought was a correct balance. The Legislature intended notice of cancellation be given in order for the applicant to reapply with another insurance company or with the same insurance company for a lesser valued policy. The restriction placed on the insurance companies that such temporary life insurance binders cannot be cancelled until five days after notice appears but a small and legitimate price to pay.

We do not think it would be instructive to discuss all of the many authorities cited by plaintiff and defendant in their well-written briefs. Only Leube v. Prudential Insurance Company of America, 147 Ohio St. 450, 72 N.E.2d 76 (1947), upon which defendant relies heavily, will be analyzed.[2]

Our research, and that of able counsel in this case, has revealed but one reported instance in point. In *Leube*, plaintiff sued to recover on an alleged contract of insurance on the life of the plaintiff's deceased wife. The insured, at the time of application, paid four weeks' premium in advance and was issued the appropriate receipt. The application was forwarded to the agent's home office of the company, was rejected by the company on the next working day, and the rejection slip was thereafter mailed to the issuing office. The applicant died on January 7, 1943. Ohio law provided that such premium receipts do create contracts of temporary or interim insurance. The controlling issue was what interim was covered thereby. The Court held "by reason of the rejection of the application in the instant case, there was no contract of insurance in effect at the time of the death of the applicant." (At p. 79.) The majority clearly rejected the notion that notice must be given as a condition precedent. Chief Justice Weygandt dissented on the issue of notice.

The authorities cited by plaintiff's counsel in his brief on the merits (pp. 10–13) and the opinion of Chief Justice Weygandt convince us that the better view of the pre-payment receipt and the temporary life insurance is that notice of cancellation is a *sine qua non* for rejection of coverage.

After a thorough canvass of the jurisprudence in this area and the pertinent treatises and our interpretation of Section 636 of the Louisiana Insurance Code, we conclude that actual notice of cancellation *must* have been given in this case to be effective. It is undisput-

2. See Harding v. Metropolitan Life Insurance Company, 188 So. 177 (Orl.La.App., 1939) reh. den'd, cert. den'd, for a discussion of the obligation imposed upon insurance companies which include the word "rejected" in binders.

ed that such notice was not timely communicated according to LSA–R.S. 22:636(A) (1); therefore, Mrs. Frances Quindlen is entitled to the proceeds under the insurance contract, plus interest at 6% per annum of the total amount due from defendant's receipt of due proof of death until paid.

## SUPPLEMENTARY OPINION AND ORDER

LSA–R.S. 22:656 prescribes the instances in which a Court may assess the 6% per annum interest rate on death claims arising under policies of life insurance. Only when the insurer fails to settle "without just cause" will the penalty be levied.

In Neider v. Continental Assurance Company, 213 La. 621, 35 So.2d 237, 241 (1948), the insurer refused to settle "on the ground that the policy was not in force and effect at the time of the death of the insured." The Second Circuit Court of Appeal, in Taylor v. Unity Industrial Insurance Company, 147 So. 91 (1933), wrote:

"We think that the jurisprudence in this state had definitely settled all the issues in this case prior to the claim for payment under these policies, and that insurance companies should be familiar with the laws and jurisprudence governing their business. That as no proof of fraud was offered and no tender made at any time of any amount by defendant company, the failure to pay these policies within the period fixed by the act was without just cause, and that the 6 per cent penalty was properly assessed." (At p. 93.)

In the facts and circumstances of this case, since R.S. 636(E) has not been interpreted by any State Court and defendant contended in good faith that the policy was not in force and effect at the time of death, we conclude that the 6% interest rate will not be assessed.

Mrs. Quindlen is entitled to the proceeds under the insurance contract plus interest at 5% per annum of the to-

tal amount due from date of receipt of due proof of death. The record does not reflect that such proof was entered; so, we order the record reopened for five days to receive evidence on that matter. Of course, if plaintiff is unable to adduce that evidence, interest will run from date of judicial demand until paid. See also Neider v. Continental Assurance Company, supra; Chalmette Finance Corporation v. All American Assurance Company, 158 So.2d 844 (La.App. 4th Cir., 1963); Harding v. Metropolitan Life Insurance Company, 188 So. 177 (La.App.Orl., 1939).