370 So.2d 630 (1979)
Leon KOLMAISTER
v.
CONNECTICUT GENERAL LIFE INSURANCE COMPANY et al.
No. 9949.
Court of Appeal of Louisiana, Fourth Circuit.
April 10, 1979.
Rehearing Denied May 17, 1979.
Writ Refused July 2, 1979.
*631 A. D. Freeman, of Satterlee, Mestayer & Freeman, Irving Novick, New Orleans, for Leon Kolmaister, plaintiff-appellant.
Phelps, Dunbar, Marks, Claverie & Sims, John P. Manard, Jr., New Orleans, for Connecticut General Life Insurance Co., defendant-appellee.
Dermot S. McGlinchey and William F. Bologna of McGlinchey, Stafford, Mintz & Hoffman, New Orleans, for Nathan Halpern, Jr. and Kessler-Bodenheimer, Inc., defendants-appellees.
Before REDMANN, BOUTALL and SCHOTT, JJ.
BOUTALL, Judge.
This is a case dealing with the question of coverage under a group insurance plan.
Orlick-Kolmaister, Inc. contracted with Connecticut General Life Insurance Company, appellee, in 1960 to provide group, life, accident and medical insurance for its employees. The policy remained in effect by periodic renewals for fifteen years. The dispute arose when Lillian Kolmaister, wife of appellant herein[1], suffered two strokes in July, 1975 entailing great expense for her *632 care. Connecticut General claimed that Mrs. Kolmaister was ineligible for major medical coverage under the policy, which covered dependents of employees, since she was past the age of 65. Under the policy, coverage terminated at the time that a dependent became eligible for the Federal Medicare Program. Mr. Kolmaister sued for a declaratory judgment to the effect that he be allowed to recover from Connecticut General "all sums to which he was entitled" under the major medical feature of the group insurance policy. Named defendants were Connecticut General and its alleged agents, Kessler-Bodenheimer, Inc. and Nathan Halpern, Jr. Trial was held before a jury resulting in a verdict in favor of the defendant insurance company and Halpern. Kessler-Bodenheimer was dismissed by the judge on a motion for directed verdict. It is from these judgments that Kolmaister appeals.
Appellant first contends the trier of fact erred in not allowing reformation of the contract, or, alternatively, holding Connecticut General and Halpern solidarily liable for appellant's loss because the error and reliance was induced by them. As to reformation, we are of the opinion that reformation does not lie in this case. An insurance policy may be reformed after proof that it does not express the actual contract intended by the parties due to mutual error or mistake. M. F. A. Life Insurance Company v. Huey, 347 So.2d 63 (La.App. 2d Cir. 1977). Reformation is also proper where the agent who issues the policy acts in a negligent, mistaken, or fraudulent manner. Herbert v. Breaux, 285 So.2d 829 (La.App. 1st Cir. 1973).
A review of the testimony leads to the conclusion that the findings of the trier of fact were not manifestly erroneous or clearly wrong. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We are convinced that the mistake in this case was only on the side of the appellant and that any negligence was only on the part of himself and Orlick-Kolmaister's employees.
The policy provision in question was first incorporated into the 1967 policy and included in each subsequent policy. The testimony reveals and the jury must have found that appellant has not shown that appellee failed to point out the changes at the regularly scheduled meeting held about the time of each policy renewal. Connecticut General's office manager testified that the medicare changes were incorporated into the standard oral presentation and written summary given to company policy holders. Further, after passage of the Medicare Act, all policy holders are required to elect to take the Medicare supplement or refuse such coverage. Orlick-Kolmaister elected to take such coverage as shown by the form filled out by the office manager of Connecticut General to this effect. There is simply no evidence to indicate that such an act was done without proper authorization from the insured.
Mr. Kolmaister's testimony that the presentations did not contain the pertinent information is not enough standing alone for this court to find that the jury verdict was clearly wrong. He was the only member of Orlick-Kolmaister who testified that he was present at the 1967 meeting. He admitted that he had no independent recall of what provisions were mentioned in the presentation at the meeting. He then testified that he was never informed that a Medicare program was included in his policy. Appellant has simply not carried his burden of proof in light of all the evidence presented.
It is important to point out that the policy holder is required to advise his employees of the termination or reduction in benefits of a group insurance plan. Greer v. Continental Casualty Company, 347 So.2d 70 (La.App. 2d Cir. 1977). The insurer is of course required by statute to provide the means to do so, i. e. a certificate for delivery to the employees. See Louisiana Revised Statute, 22:215. The policies in this case provided for this requirement (see section 40 of the 1967 and 73 policies). Further, the evidence shows that Connecticut General provided booklets to Orlick-Kolmaister for this purpose and that each booklet contained provisions dealing with Medicare. A reading of the booklets placed *633 in evidence convinces us that Connecticut General has complied with the law in this area and that the books are not "hopelessly misleading" as appellant contends.
We feel that appellant's contentions are without merit. We have carefully examined the actions of the insurer and the agent and cannot find them guilty of negligence, nor do we feel that this is a case in which the insurance contract can properly be reformed. As stated, we find that if any one was negligent in this case, it was the employees of Orlick-Kolmaister, including appellant. These findings make it unnecessary for us to consider the dismissal of Kessler-Bodenheimer as a defendant by directed verdict. Kessler-Bodenheimer is not liable for the same basic reasons.
Appellant's final contentions deal with alleged comments on the evidence on the trial judge and the jury instructions. We find that appellant has waived his right to object as to the jury instructions mentioned in appellant's brief[2] since no specific objection was made in court on this point. General objections are not sufficient to preserve rights under Code of Civil Procedure Article 1793. See Fincher v. Surrette, 365 So.2d 860 (La.App. 4th Cir. 1978). The appellant did, however, object specifically to certain portions of the trial judge's jury charge in which he allegedly commented on the evidence to the prejudice of the appellant and we will, therefore, consider this contention.
A trial judge must endeavor to avoid commenting on the evidence. Lauro v. Travelers Insurance Company, 261 So.2d 261 (La.App. 4th Cir. 1972). The judge, however, has the responsibility to avoid confusing the jury and the right to use whatever semantics may be appropriate for this purpose. Alexander v. Alton Ochsner Medical Foundation, 276 So.2d 794 (La.App. 4th Cir. 1973). We have examined that section of the judge's charge to which appellant objects and we feel that the trial judge was simply making use of all means available to help the jury understand the issues in the case. These questions were in no way prejudicial to appellant's case, nor did they constitute a comment on the evidence presented.[3]
For all of the above reasons, the judgment below is affirmed.
AFFIRMED.
NOTES
[1] Appellant, Leon Kolmaister, was in 1960, and has remained owner, president and chief executive officer of Orlick-Kolmaister, Inc.
[2] Appellant argued that the judge erred in instructing the jury that the Kolmaister company had an affirmative duty to inform Connecticut General of all coverage as desired.
[3] In the context that the judge was explaining to the jury its duty to evaluate the policy and the evidence, he posed a number of questions, the first few of which we quote along with the introductory remarks:

"I'm just going to suggestWas the plaintiff, Mr. Kolmaister, informed of this policy provision? Did he know or should he have known of the Medicare provisions and limitations that were placed in this policy as far back as 1967? If they were placed in the policy as far back as 1967, was this brought to his attention, that is, the Medicare aspects of the case? In '67 was it brought to his attention or should he have become aware of it when they renegotiated the policy in '70 or again in '73? Was this Medicare limitation a part of this insurance program for eight full years or not? When was it instituted? Was it instituted in '67 and again renewed each time the policy was revised? Did the Kolmaister Company have the opportunity to reject the Medicare limitations in this policy and, if so, did it avail itself of that opportunity? Did they make some selection as to what they wanted and did they get what they selected?"