388 So.2d 464 (1980)
Mrs. Gladys G. JOHNSON, Plaintiff-Appellee,
v.
NATIONWIDE LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 14229.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1980.
*465 Davenport, Files, Kelly, Marsh & Graham by William G. Kelly, Jr., Monroe, for defendant-appellant.
Lancaster, Baxter & Seale by E. H. Lancaster, Jr., Tallulah, for plaintiff-appellee.
Before PRICE, HALL and JASPER E. JONES, JJ.
HALL, Judge.
Plaintiff-beneficiary sued defendant-life insurance company to recover $2,500 in benefits due under a certificate of insurance issued by the defendant to plaintiff's deceased husband pursuant to a group life insurance policy issued by defendant to International Consumer Credit Association. The defendant insurance company denied liability on the basis that coverage had terminated prior to the insured's death under policy and certificate provisions providing for termination of the insurance in the event of termination of the insured's membership in the Association.
After trial, the district court held that LSA-R.S. 22:636 required notice of cancellation and since notice of cancellation was not given, the insurance upon which premiums had been paid through the date of the insured's death, remained in effect. From a judgment for $2,500, plus 6 percent interest under the penalty provisions of LSA-R.S. 22:656, defendant appealed. We affirm.
Defendant specifies that the district court erred (1) in failing to apply Missouri law rather than Louisiana law; and (2) in holding that notice of cancellation was required where the policy specifically provided for termination of coverage upon termination of membership.
The case was tried on a written stipulation of facts together with attached documents.
Decedent, a Louisiana resident who died May 24, 1976, joined the Association in 1959 and regularly paid annual dues of $5 or $6 *466 for each year thereafter through the year ending September 30, 1975. Although decedent was sent dues payment notices, there is no record that he paid dues for the membership year beginning October 1, 1975. No notice of termination of membership was sent to decedent.
The group policy was issued in 1970 by defendant, an Ohio company, to the Association, a Missouri company. A certificate of insurance was issued by defendant to decedent in 1970 and quarterly insurance premiums were paid by decedent to defendant regularly, including a payment on March 10, 1976 for the quarter ending June 1, 1976. No notice of cancellation or termination of the policy was sent to decedent.
The policy and certificate contained the following provision, which defendant contends caused the coverage to automatically terminate as of March 1, 1976, without notice of cancellation, due to termination of decedent's membership on September 30, 1975:
"A Certificateholder's coverage under any benefit provision of the Policy terminates upon occurrence of the first of the following: ...
"(4) end of the Quarterly Premium Period next following the Quarterly Premium Period during which the Certificateholder's membership or employment by a Member or by the International Consumer Credit Association terminated, unless the Certificateholder has re-established his status as a Member or an Employee, as defined herein, within this time period. The acceptance of a premium or premiums after such termination of insurance shall not make the Company, the International Consumer Credit Association Group Insurance Trust Fund, the Trustees thereof, or the International Consumer Credit Association liable for benefits under this Policy, nor be a waiver of such termination. The limit of liability in the event of such termination of insurance and the failure to re-establish Member or Employee status shall be the refund of any such premiums paid for any such period subsequent to such termination.
"Except as provided above, the continuation of individual insurance coverage under this Policy is dependent upon the Certificateholder's maintenance of his status as a Member or an Employee, as defined herein. The Certificateholder shall be personally and solely responsible for meeting this condition of insurance under this Policy. For this reason, the Certificateholder is required to give prompt notice to the Trustees of the International Consumer Credit Association Group Insurance Trust Fund, at the address from which quarterly premium notices are mailed, of any termination of his or his employer's membership in the International Consumer Credit Association and of any change in his employment, both as to the name of the employer and address thereof, and to answer promptly and in writing any and all written inquiries from the Trustees of the International Consumer Credit Association Group Insurance Trust Fund concerning such information."
Appellant contends this case is governed by Missouri law since the group policy was issued in Missouri. The trial court correctly applied Louisiana law to this case. Although the group policy was issued in Missouri, the certificate of insurance was issued to the Louisiana insured in Louisiana. LSA-R.S. 22:629 provides that no insurance contract delivered or issued for delivery covering subjects located, resident, or to be performed in this state shall contain any condition, stipulation or agreement requiring it to be construed according to the laws of any other state. As between defendant and the decedent, the insurance contract was issued and delivered in Louisiana. Casey v. Prudential Ins. Co. of America, 360 So.2d 1386 (La.App.3d Cir. 1978), squarely held that Louisiana law was applicable to a suit for benefits under a certificate issued to a Louisiana resident under a group life insurance policy issued in Missouri.
Under any choice of law analysis, Louisiana law would be applicable. Louisiana's interest in protecting Louisiana residents *467 who have been issued policies by out-of-state companies, and in regulating the relationship between the Louisiana resident and the Ohio company in this case, far outweighs Missouri's interest in regulating the relationship between the Ohio company and the Louisiana resident.
Even if there were a basis for applying Missouri law, the Missouri law has not been established in this case. Although LSA-C.C.P. Art. 1391 provides that a Louisiana court shall take judicial notice of the law of other states, it is well settled that Louisiana appellate courts are not required to and ordinarily will not take notice of the law of another state in the absence of a showing by the party urging the applicability of such law of what that law is. Here, defendant made no showing of what the Missouri statutory or case law is, other than to cite a 1946 Missouri case dealing with the effect of termination of employment, not membership, under a group life insurance policy. Absent a showing of what the other state's law is, it will be presumed to be the same as Louisiana. Cambre v. St. Paul Fire and Marine Insurance Co., 331 So.2d 585 (La.App. 1st Cir. 1976), writ refused 334 So.2d 434, 435 (1976); Franks v. Louisiana Health Ser. & Indem., 382 So.2d 1064 (La.App. 2d Cir. 1980). Gathright v. Smith, 368 So.2d 679 (La.1979), declares that a Louisiana appellate court may, on its own initiative, inquire into another state's law where applicable, but does not hold that the appellate court must do so, and does not overrule or detract from Cambre or Franks.
Appellant contends that under Louisiana law and the express terms of the policy coverage terminated automatically at the end of the quarterly premium period following the quarterly premium period when the insured's membership was terminated, and notice of cancellation was not required. Decedent died prior to the effective date of LSA-R.S. 22:636.3 which now clearly and specifically requires notice of cancellation of group certificates by reason of termination of employment or membership.
Breland v. All American Assurance Company, 366 So.2d 1051 (La.App. 1st Cir. 1978), which also involved facts arising prior to the effective date of LSA-R.S. 22:636.3, held notice of cancellation was required by LSA-R.S. 22:636 under facts virtually identical to the instant case. The insured's coverage was conditioned upon membership in the American Motor Club. At the time the insured's claim arose, her membership was no longer valid because of failure to pay dues. The court held coverage remained in effect because of failure of the insurer to give notice of cancellation as required by LSA-R.S. 22:636.
Appellant argues that LSA-R.S. 22:636 is not applicable because, under subsection E, the statute does not apply where the policy does not contain a provision for cancellation prior to a date to which premiums have been paid, and the policy in this case does not contain such a provision since termination does not occur for nonmembership until after the end of a paid premium period. This argument follows the literal wording of subsection E, but, as noted in Quindlen v. Prudential Insurance Company of America, 342 F.Supp. 9 (W.D.La.1972), such literal interpretation of the exception is "nonsensical." Such an interpretation would mean that an insurer could cancel a life insurance policy at the end of a premium period without notice of cancellation even though premiums had been paid for that period. This would be entirely inconsistent with the intent and purpose of the notice requirement. This statute, and other provisions of the insurance code, such as LSA-R.S. 22:177 relating to notice of failure to pay premiums, are designed to prevent termination, lapse or cancellation of insurance coverage due to mere inadvertence on the part of the insured and to give an insured the opportunity to retain coverage or obtain other coverage.
Because the defendant failed to give notice of cancellation as required by LSA-R.S. 22:636, the policy remained in effect during the period for which premiums were paid, which included the date of the insured's death.
We also note that the stipulation and exhibits in this case do not establish with *468 certainty that the insured's membership in the association terminated on September 30, 1975, at the end of the last year for which there was a record of payment of annual dues by him. He had been a member since 1959. No notice that his membership was terminated was sent to him. The insurer continued to bill him and to accept payment for premiums. The stipulation of facts does not establish that failure to timely pay dues automatically resulted in termination of membership, or the date on which such membership terminated. The record does not contain the charter, by-laws, membership rules, or other regulations of the Association governing membership. It cannot be presumed that a failure of this long-standing member of the Association to timely pay dues resulted in the automatic termination of his membership as of the end of the previous year for which he had paid dues. If the Association continued to carry him on its rolls as a member only until December 1975, and neither the affirmative nor the negative of this is shown, then termination during that month or thereafter would have continued the insurance in effect through May 1976, the month of the insured's death, under the terms of the policy.
For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.