CULPEPPER, Judge,
dissenting.
In my view, the Bank’s failure to record its chattel mortgage in compliance with Kansas law leaves it without protection as against the subsequent purchaser in good faith who relied on the apparently valid, but actually forged, release of the Bank’s lien. To hold otherwise, as the majority has done, .ignores our established rule that Louisiana courts will not recognize a foreign chattel mortgage unless it is valid and properly recorded in the state where executed. See the cases cited in the majority opinion.
Clearly, the Bank has the burden of proving the laws of Kansas upon which it relies regarding registration of liens on motor vehicles, and also that it has complied with these laws. Louisiana jurisprudence has established the rule that although LSA-C. C.P. Art. 1391 provides that a Louisiana court may take judicial notice of the laws of other states, our courts are not required to and ordinarily will not take notice of the law of another state in the absence of a showing by the party urging the applicability of such law of what that law is. Johnson v. Nationwide Life Insurance Co., 388 So.2d 464 (La.App. 2d Cir.1980) and the cases cited therein. The only evidence introduced by the Bank at the trial to prove the law of Kansas and compliance therewith was the testimony of Sharon K. Selen-ka, the Bank’s recovery officer, and certain forms which she identified. Ms. Selenka had no personal knowledge of the Goines chattel mortgage or the recordation thereof, but she testified as to the Bank’s records of this loan and as to the procedure used by the Bank to obtain and perfect under Kansas law a lien on an automobile. She stated that where, as in this ease, there is an existing title in the name of the previous owner, the automobile dealer completes the assignment of title to the purchaser and shows the Bank as lien holder. The Bank then gets the title and it prepares three copies of a Notice of Security Interest (NOSI) showing the Bank as lien holder and has the owner sign all three copies. The Bank then sends the title and two copies of the NOSI to the Division of Vehicles in Topeka, Kansas. The Division of Vehicles keeps one copy of the NOSI and returns the other to the Bank showing the title number as evidence of the perfection of the lien. The Division of Vehicles sends the title to the owner. Her testimony is not clear as to whether a new title is issued in the name of the new owner, or whether the old title is sent back to the new owner. Of course, in the present case, a new title was not issued. The title which Goines had in his possession when he went to Louisiana was the old title in the name of Slothower.
Ms. Selenka identified, and the Bank filed in evidence, the copy of the NOSI which the Bank retained. She admitted that the Bank never received from the Divi *1337 sion of Vehicles a copy of the NOSI showing that it had been recorded.
As the majority opinion states, Slothower came to Shreveport, Louisiana in October of 1982 with the Vehicle, the Slothower title showing on the reverse side an assignment of ownership to him and the chattel mortgage in favor of the Kansas bank, and he also had the release of the Bank’s lien in notarial form, but it later developed that this release was a forgery. Relying on the showing that Goines had the vehicle, the title and the release of the Bank’s lien, the intervenor purchased the vehicle from Goines as a trade-in on another vehicle. Intervenor sold the automobile in question to City Motor Company of Lufkin, Texas, which in turn sold it to B & B Motor Company, which sold it to one Sylvia For-sythe of Lufkin, Texas. Sylvia Forsythe obtained in her name a Texas title dated November 9, 1982. Neither the Texas Motor Vehicle Division nor any of these subsequent purchasers from intervenor questioned the validity of the title or the release of the Bank’s lien furnished by Goines.
During January of 1983 the recovery officer of Union National Bank located the vehicle in Lufkin, Texas and discovered that Sylvia Forsythe had a Texas title which did not show the Bank’s lien. The Bank notified the Texas Motor Vehicle Division that it claimed a lien and that division notified Forsythe of the Bank’s claim and suspended Forsythe’s title. Forsythe took the vehicle back to B & B, who in turn sent it back to City Motors, who sent it back to intervenor. The intervenor had to refund to City Motor Company the price of $5200 for which it had sold the vehicle to City Motor.
The Bank filed the present suit in Caddo Parish, Louisiana on February 22, 1983, claiming a lien under its Kansas chattel mortgage and obtained a writ of sequestration to the sheriff of Caddo Parish to seize and hold the vehicle pending outcome of this litigation.
In March of 1983, the Bank filed with the Division of Vehicles in Kansas an application for a “Repossession Title”, which application includes a “Repossession Affidavit” by the Bank stating that it had a lien on the vehicle, that the chattel mortgage was in default, and that the Bank had “repossessed” the vehicle “according to law” and had complied with all of the requirements of the uniform commercial code as adopted in Kansas, and that the Bank desired that a repossession title issue in its name. Pursuant to this application, a repossession title dated March 30, 1983 was issued to the Bank.
At the trial the Bank filed in evidence Plaintiff’s Exhibit-8, which is a certificate from the chief of titles and registration of the state of Kansas, dated May 5, 1983 stating that attached to this certificate are copies of all records on file in his office regarding the vehicle in question. Attached to this certificate is a copy of the repossession title issued to the Bank in 1983, a copy of the application for repossession title filed by the Bank on May 21, 1983, and a copy of the certificate of title which was issued to Slothower in 1981 showing on the reverse side thereof the assignment by Slothower to King Lincoln Mercury in Kansas and the assignment by King Lincoln Mercury to Goines with a lien to Union National Bank. However, as counsel for the intervenor points out in his brief, the copy of the Slothower title attached to the certificate is a copy of that title which the Bank obtained from the state of Texas and attached to its application for a repossession title in Kansas in 1983. It is also highly significant that P-8 does not include a copy of the NOSI which Ms. Selenka testified should have been mailed to the Kansas Division of Vehicles showing the Bank’s July 15, 1982 chattel mortgage.
On cross examination, counsel for the intervenor questioned Ms. Selenka closely as to why the chief of registration in Kansas did not include with his certificate a copy of the Bank’s 1982 NOSI. Ms. Selen-ka could not explain this discrepancy. When asked how she knew that the Kansas Division of Vehicles had received the NOSI, Ms. Selenka could only say that she did not *1338 think the division would have issued to the Bank a repossession title in 1983 unless they had a copy of the NOSI on file. This assumption by Ms. Selenka is not supported by any other evidence nor by any statute, regulation or case on Kansas law brought to our attention. From a mere reading of the Bank’s application for a repossession title it would appear that the purpose of this procedure is to permit the holder of a lien or a conditional sales contract to file an application stating that the contract is in default, that they have repossessed the vehicle according to law, that they cannot locate the debtor to secure either the title or a release and that therefore they are entitled to a repossession title. In any event, there is absolutely no showing by evidence or by any law of Kansas that the Division of Vehicles would not have issued a repossession title unless they had a NOSI on file. In his appellate brief, counsel for the intervenor makes a persuasive argument that if the Division of Vehicles of the state of Kansas actually did have on file the NOSI in question, certainly this banking institution in Kansas would have been able to obtain a copy of it.
The majority opinion states:
A lien may be perfected in Kansas by the actual recordation or by the mailing to the recording office of a Notice of Security Interest (NOSI) signed by the owner and the creditor. See 28 Kansas Law Review, 315 (1980).
As I understand it, this statement implies that a lien can be perfected in Kansas either by “actual recordation” on the certificate of title or by mailing the NOSI to the Division of Vehicles. I find no support for this statement. A reading of Ms. Selenka’s testimony shows clearly that she thought perfection of the Bank’s lien required that the NOSI be sent to the Division of Vehicles in Topeka, Kansas. She went to great lengths to try to prove that the NOSI was recorded, but I think she failed, for the reasons set out above. A Kansas Law Review article was cited and a copy supplied in a supplemental brief filed in the appellate court. This article comments on the decision in Lentz v. Bank of Independence (In re Kerr), 598 F.2d 1206 (10th Cir.1979). That comment and the decision in Kerr indicate that previous to 1975 there was no Kansas statute 'providing for the recordation by the lien holder of a NOSI, which' left the lien holder at the mercy of the title holder who may or may not record his title showing the lien. However, in 1975 the Kansas statute was amended to provide that the lien holder could perfect his lien by recording a NOSI. The Kerr case holds:
When the law provides a simple and inexpensive way to protect the lien the creditor should be required to use it, if the creditor desires protection against failure of the debtor to register the car in Kansas.
The author of the law review comment states that “after Kerr, a lender must either send a NOSI to the Division of Motor Vehicles or rely on the borrower in order to acquire a perfected security interest in the motor vehicle.” Of course, in the present case, there is absolutely no evidence that the borrower, Goines, secured from the Division of Motor Vehicles a title showing the Bank’s lien and, as I have concluded above, there is also no evidence that the Bank perfected its lien by recording a NOSI.
Actually, we are only speculating as to the laws of Kansas. The burden of proof was clearly on the Bank to prove these laws and any doubt must be construed against the Bank which is relying on them.
I conclude that the Bank has failed to prove its lien under the laws of Kansas. Moreover, I think the evidence shows that the intervenor purchased the vehicle in good faith for a valid consideration and has title. The Bank’s argument that the inter-venor should have noticed the release of its lien was a forgery is not discussed by the majority. I conclude this argument clearly has no merit. Not only the intervenor but three subsequent purchasers of the vehicle and the Division of Vehicles of the state of Texas accepted this release without question.
*1339 The intervenor took only a devolutive appeal. The record before us shows that after judgment was rendered in favor of the Bank in the district court th*e vehicle in question was sold at a judicial sale and the Bank bought it on a bid of $2840. Although I find that the intervenor owned the automobile free of any lien by the Bank, jurisprudence has established the rule that the validity of a judicial sale made in execution of a judgment cannot be affected by subsequent reversal of the judgment on a devolutive appeal. State v. Mutual Inv. Co., Inc., 214 La. 356, 37 So.2d 817 (1948). Thus, the sale cannot be annulled and the intervenor cannot be declared the owner of the automobile. However, intervenor has prayed in the alternative for judgment against the Bank and Goines in solido in the sum of $5200, this being the trade-in value allowed by intervenor to Goines for the automobile in question, and also being the sum which intervenor had to refund to City Motors. Intervenor is entitled to the alternative demand for these damages for the wrongful issuance of the writ of sequestration and the subsequent seizure and sale of the automobile.
For the reasons assigned, I respectfully dissent.