478 So.2d 634 (1985)
Debra C. MATTHEWS, Appellant,
v.
BUSINESS MEN'S ASSURANCE COMPANY OF AMERICA, Appellee.
No. 17298-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1985.
*635 Donald R. Miller, Shreveport, for appellant.
Blanchard, Walker, O'Quin & Roberts by L. David Cromwell, Shreveport, for appellee.
Before MARVIN, JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
This is a suit to collect medical and hospitalization benefits under a group insurance policy. The trial court took the case under a set of stipulated facts and rendered judgment against the claimant, Ms. Matthews. She now appeals and we affirm.
The facts are very simple. Ms. Matthews went to work at Topps Western Store in Bossier City in September 1980 and worked there until August 1981. She enrolled in the group insurance plan issued by appellee in April 1981 and paid monthly premiums under the plan. When she left Topps on August 1, 1981, she was verbally informed by Topp's bookkeeper that her insurance coverage would lapse at the end of the month. However, she never received any written notice of cancellation from the insurer. The insurer, in fact, never received any formal notice from Topps to discontinue Ms. Matthews's coverage, although it did receive a handwritten notation on a monthly premium payment that her name should be deleted from the policy list. Regardless of the lack of notice from the insurer, Ms. Matthews fully understood that her coverage was about to lapse; she also knew that she was no longer paying premiums for coverage.
Nearly ten months after she left Topps, Ms. Matthews delivered a child; two months after that, she had a thyroid surgery. As a result of these hospital visits, she incurred expenses that would have *636 been covered in part by the group health and accident policy.[1] The insurer refused to pay, asserting that Ms. Matthews had not only stopped making premium payments but had also failed to exercise conversion rights which would have enabled her to continue her insurance. This suit followed.
On appeal, Ms. Matthews argues that LSA-R.S. 22:636[2] and 636.3 impose on the insurer the burden of sending her a written notice of cancellation, and that without the notice, any attempted cancellation is ineffective. She cites in her behalf Johnson v. Nationwide Life Ins. Co., 388 So.2d 464 (La.App. 2d Cir.1980) and Breland v. All Amer. Ins. Co., 366 So.2d 1051 (La.App. 1st Cir.1978).
Ms. Matthews correctly asserts that § 636 imposes on the insurer the duty to send notice of cancellation, as well as a burden of proving the sending of notice. Failure to send notice is fatal to any attempted cancellation under many circumstances. See Robertson v. Travis, 393 So.2d 304 (La.App. 1st Cir.1980), writ denied 397 So.2d 805, 806 (La.1980). However, § 636 contains an exclusionary subsection, which provides:
E. This Section shall not apply to * * contracts of life or health and accident insurance which do not contain a provision for cancellation prior to the date to which premiums have been paid * * *.
This subsection provides that the written notice requirement does not apply to any health insurance policy which cannot be cancelled for any paid-up term. See Humana Inc. v. King, 359 So.2d 237 (La. App. 2d Cir.1978). We have closely studied the contract issued by the insurer. It does not specifically define its contract term, but the paragraph "Renewal Agreement"[3] clearly identifies the term as one month, subject to regular renewal. The coverage may be terminated by the insurer with a sixty-day written notice. The coverage may also be terminated by the insured or by the employer, but this termination never takes place until 11:59 p.m. on the night before the next renewal date. Thus there is no provision for cancelling a policy for a month that has already been paid up. As a result, § 636 does not apply.
We are sensitive to the argument that subsection E should not be applied literally to deny coverage. See Johnson v. Nationwide Life, supra; Quindlen v. Prudential Ins. Co., 342 F.Supp. 9 (W.D.La.1972). However, these cases relied on the equitable consideration that cancellation should never result from mere inadvertence on the part of the insured. Where there is a question that the insured might have been misled or wrongly induced not to secure additional insurance, the reliance on equity might be well founded. In the instant case, the equities correspond to a precise interpretation of the exception. We applied this exception literally in Humana Inc. v. King, supra. Ms. Matthews knew that her insurance would lapse, and she made no payments for ten months. She cannot credibly contend that she was merely inadvertent or misled.
*637 A close look at § 636 D[4] fortifies this conclusion. It provides that when a policy is cancelled, any unearned premium must be refunded to the insured. Obviously, if the insurer cannot cancel for a paid-up term, then there would be no need to require a refund; there would never be a refund. The Johnson and Breland cases relied on by Ms. Matthews both involved attempts by an insurer to cancel a policy in the middle of a one-year term that was partially paid; if the policy had been successfully cancelled, the plaintiffs would have been entitled to a refund of premiums. This is not the case here, and the Johnson and Breland are distinguished.
Ms. Matthews next argues that she was entitled to written notice under LSA-R.S. 22:636.3.[5] This section permits the insurer to cancel the policy if the insured fails to maintain requisite membership in an organization. Such a cancellation, however, would also require a written notice. Ms. Matthews claims that when she left Topps's employ, she ceased to be a member of an organization, so the insurer could only have cancelled her with written notice. We find, however, that § 636.3 does not apply. Employment is not membership inan organization. Membership in an organization means, for example, joining a motor club, as in Breland, supra, or a credit association, as in Johnson, supra. If the legislature had intended "employment" to be included in § 636.3, it would have added it to the statute. Even the insurer's application form in this case draws a distinction between a "company or association," thus underscoring the difference between employment and membership.
Ms. Matthews finally argues that she had no knowledge of her contractual conversion rights which, she claims, would have enabled her to retain coverage even after she left Topps's employ. LSA-R.S. 22:636 and 636.3 do not pertain to conversion rights; they pertain to cancellation. The insurer is not statutorily bound to send written notice of conversion rights. Rather, an insured is presumed to know the provisions of his policy. LSA-C.C. art. 2045 (1985); art. 1945 (1870) (repealed). Ms. Matthews did not elect to pursue her conversion rights; nor has she alleged vices of consent to vitiate the agreement. She did not even perform any acts that could be liberally construed as an attempt to exercise her conversion. This is consistent with her stipulation that when she left Topps she fully understood that her coverage would lapse at the end of the month; her failure to get substitute coverage did not in any way result from misplaced reliance. Thus she is unfortunately left without coverage.
The lower court's judgment is affirmed at appellant's cost.
NOTES
[1] The hospitalization policy at issue is a "health and accident" policy under LSA-R.S. 22:6(2). Rudloff v. La. Health Services & Indent. Co., 385 So.2d 767 (La.1978).
[2] LSA-R.S. 22:636 provides, in pertinent part:

§ 636. Cancellation by insurer
A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following;
(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than five days prior to the effective date of the cancellation.
(2) Like notice must also be so delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur thereunder.
[3] The "Renewal Agreement" provides in part:

On any premium due date the insured may renew this policy for a term of one month by payment within the grace period of the premium in effect at the time of such renewal, subject to the Termination provision and the following paragraph.
[4] LSA-R.S. 22:636 D provides:

D. The portion of any premium paid to the insurer on account of the policy, unearned because of the cancellation and in amount as computed on the pro rata basis, must be actually paid to the insured or other person entitled thereto as shown by the policy or by any endorsement thereon, or be mailed to the insured or such person as soon as practicable following such cancellation. Any such payment may be made by cash, or by check, bank draft, or money order.
[5] LSA-R.S. 22:636.3 provides, in part:

636.3 Cancellation by insurer; failure to maintain membership in required organization
A. An insurer may cancel any policy of insurance for failure to maintain membership in an organization if membership is a condition precedent to insurance coverage.
B. Cancellation under this Section by the insurer of any policy or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than fifteen days prior to the effective day of the cancellation.
(2) Like notice must also be so delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur thereunder.