LeBLANC, Judge.
This is a suit against plaintiff’s former employer for reimbursement of certain medical expenses.
Plaintiff, Kim W. Carr, was terminated from her employment with defendant, K & B, Inc., on August 29, 1986. She was verbally advised at that time that her health care coverage would terminate after thirty (30) days. On May 15, 1987, plaintiff gave birth to a child by ceasarean section. She now seeks to recover the medical expenses of her pregnancy, totaling $4,437.42, from K & B.
When plaintiff was employed by K & B during 1986, its employees were given the choice of joining one of three health plans, consisting of one health and accident plan carried by Northwest National Life and two HMO (health management organization) plans, HealthAmerica and Maxicare. K & B paid most of the premiums under each of these plans, with the employee making only a small contribution. By agreement with K & B, each of the plans operated on a yearly basis, subject to a renewal effective the first day of each calendar year.
Prior to her termination, plaintiff had chosen to be and was in fact covered under the HealthAmerica plan. There is some indication that sometime in late 1986, subsequent to plaintiff’s termination, Heal-thAmerica may have gone out of business. In any event, plaintiff never attempted to present a claim to HealthAmerica for her pregnancy expenses. Rather, on September 28, 1987, she filed suit against K & B, *506 HealthAmerica, or in the alternative XYZ Insurance Company. Apparently, no actual attempt was made to serve HealthAmeri-ca. Plaintiff sought recovery against K & B on the theory it had failed to notify her that she was entitled under the federal Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) to continue her group coverage for a specified period of time after she was terminated.
After trial, the district court concluded the provisions of COBRA were not applicable to this case because COBRA specifically applied only to plan years beginning after July 1, 1986, whereas the plan year of the HealthAmerica plan in question was January 1, 1986 through December 31, 1986. Accordingly, the trial court rendered judgment in favor of defendant, dismissing plaintiffs suit. Plaintiff has appealed.
Plaintiff now contends on appeal that K & B is liable for her medical expenses because it failed to give her proper notice of the termination of her coverage as required by La.R.S. 22:636 and 636.3.[1] At the time in question, these provisions provided in pertinent part as follows:
La.R.S. 22:636
A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with any or all of the following:
(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than twenty days prior to the effective date of the cancellation except where termination of coverage is for nonpayment of premium.
La.R.S. 22:636.3
A. An insurer may cancel any policy of insurance for failure to maintain membership in an organization if membership is a condition precedent to insurance coverage.
B. Cancellation under this Section by the insurer of any policy or of any binder based on such policy, may be effected as to any interest only upon compliance with any or all of the following:
(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than twenty days prior to the effective day of the cancellation.
First, we note some reservation as to whether R.S. 22:636 and 636.3, which require written notification of the cancellation of an “insurance policy” by an “insurer” even apply in' situations such as the present one involving a HMO.[2] However, even assuming arguendo that they do, these provisions do not specifically impose any duty on employers. In fact, the effect of these provisions is to impose a duty upon insurers with regard to cancellation of certain policies of insurance. We do not believe these provisions impose any duty on employers in situations such as the present one where coverage has been terminated because an employee has left the employer’s employment.
Plaintiff also cites jurisprudence to the effect that an employer has a duty to notify an employee of the termination of his coverage under an employees’ group insurance plan. See, Kolmaister v. Connecticut General Life Ins. Co., 370 So.2d 630 (La.App. 4th Cir.), writ denied, 373 So.2d 531 (1979); Greer v. Continental Cas. Co., 347 So.2d 70 (La.App. 2d Cir.1977). Plaintiff argues that this notifica *507 tion must be in the form of a certificate provided by the insurer as required by La. R.S. 22:215. This argument lacks merit. La.R.S. 22:215 requires an insurer to issue to an employer for delivery to each employee insured under a group policy a certificate containing a statement of the insurance protection to which he is entitled. However, the terms of this provision do not specifically require the issuance of a certificate giving notice of the termination of coverage under such a policy. See, Humana, Inc. v. King, 359 So.2d 237, 239 (La.App. 2d Cir.1978). Although we agree an employer must give notice of the termination of group coverage to an employee, we find no requirement, statutory or otherwise, that this notice be in written form, as in the case of the notice required of insurers.[3]
In this case, plaintiff was given actual, verbal notice by K & B that her medical coverage would continue only until the end of September. We believe that this notification was sufficient to meet any duty of notification K & B may have owed to plaintiff. See, Tabb v. La. Health Services & Indem. Co., 361 So.2d 862, 864 (La.1978), overruled on other grounds by Rudloff v. Louisiana Health Services & Indem., 385 So.2d 767, on rehearing (La.1980). Contrary to plaintiff’s contentions, we conclude that an employer is not held to the same standard for notification imposed by statute upon insurers.
For the above reasons, the judgment of the trial court is affirmed. Plaintiff is to pay all costs of appeal.
AFFIRMED.

. Plaintiff has apparently abandoned any claims under COBRA. The ruling of the trial court was correct in any event.

. La.R.S. 22:5(2) was amended by Acts 1989, No. 666, § 1, effective September 1, 1989, to provide that a health maintenance organization was to be considered an "insurer” only for purposes of liquidation, conservation, rehabilitation, and/or receivership as defined and set out in Title 22.
Further, it has been held by one case that La.R.S. 22:636.3 does not apply to employee group insurance plans because employment is not membership in an organization for purposes of this provision. Matthews v. Business Men’s Assur. Co., 478 So.2d 634 (La.App. 2d Cir.1985).

. In Kolmaister, 370 So.2d at 632, the Fourth Circuit stated that:
It is important to point out that the policy holder is required to advise his employees of the termination or reduction in benefits of a group insurance plan. The insurer is of course required by statute to provide the means to do so, i.e. a certificate for delivery to the employees. See Louisiana Revised Statute, 22:215. (Citation omitted)
To the extent that this language can be constituted to impose a requirement upon employers to give employees written notification of the termination of coverage, we disagree. As noted above, we do not interpret the language of La. R.S. 22:215 as imposing such a requirement upon employers.