446 So.2d 408 (1984)
Louis VELEZ, Jr., Individually and as Administrator of the Estate of His Son, Marc Velez
v.
SENTRY INSURANCE COMPANY, Strauss Fuchs Organization, Inc., United Employers Insurance Trust.
No. CA-1036.
Court of Appeal of Louisiana, Fourth Circuit.
February 9, 1984.
*409 Herman, Herman & Katz, Fred L. Herman, New Orleans, for plaintiff-appellee.
Dodge, Friend, Wilson & Spedale, Gordon F. Wilson, Jr., New Orleans, for defendants-appellants.
Before GULOTTA, GARRISON and LOBRANO, JJ.
GULOTTA, Judge.
This appeal involves the question of plaintiff's entitlement to health and accident insurance benefits for mental illness expenses incurred on behalf of his son in the stipulated amount of $28,076.65.
Louis Velez, Jr., an employee of Ricca Demolishing Co., Inc., was covered by a group policy obtained by Strauss Fuchs Organization, Inc. (SFO), administrator of United Employers Insurance Trust (Trust).[1]
In August, 1971, when Ricca joined the Trust, coverage was afforded by Hartford Life Insurance Company. In 1973, American Republic Insurance Company replaced Hartford. Plaintiff's son had a history of mental illness and was paid by the insurers for expenses incurred in connection with that illness.
In February, 1975, Sentry Life Insurance Company was named as the insurance carrier for the Trust's group hospitalization *410 programs.[2] However, Sentry refused payment of the expenses of the son's hospitalization for mental disorders from May, 1976 to July, 1977. The basis of this denial was the $10,000.00 maximum benefit for mental disability provided for in the Sentry policy.
Plaintiff settled his claim against Sentry and directed this suit against the Trust and its administrator for the remaining stipulated medical expenses incurred. From a judgment in favor of plaintiff in the sum of the stipulated expenses, SFO and the Trust appeal.
In clear, concise reasons for judgment, the trial judge stated:
"The Court finds that the defendants had an obligation to clearly point out a change in the coverage for mental illness which provided for less coverage.
"The Court finds that the defendants failed to adequately notify Mr. Velez of this reduction in benefits."
Defendants raise three arguments on appeal. The first is that Missouri law applies since the Trust is a Missouri corporation, and administers a plan under the laws of Missouri on an insurance policy delivered to it in that state. In this connection, defendants claim that Missouri in 1976 and 1977 did not have a statute similar to LSA-R.S. 22:213.1 and 2 (now LSA-R.S. 22:669), which provides that an insurer of group health and accident insurance shall provide the same limitations of coverage for mental illness as for other benefits.[3]
Defendants' second contention is that, assuming the Trust and the administrator had a duty to notify the beneficiary of the reduction in mental health benefits, the trial judge erred in finding that no notice was given.
Finally, defendants claim that plaintiff failed to prove the Trust or the administrator breached any duty concerning the Louisiana statutory requirements of mental disorder coverage in the policy. According to defendants, if the policy did not comply with LSA-R.S. 22:213.1 and 2, plaintiff's sole remedy is against the insurer alone, not defendants, to have the policy reformed to increase coverage for mental disorders to an amount equal to those for other disabilities.
Because we find no merit to defendants' contentions, we affirm.

CONFLICT OF LAWS
We reject defendants' assertion that plaintiff's claim is governed by the laws of the state of Missouri. Both plaintiff and his employer are residents of Louisiana. Although the Trust was created in Missouri where its administrator is also located, the coverage is on Louisiana residents and the insurance contract was issued for delivery in this state.
LSA-R.S. 22:629 provides that no insurance contract delivered or issued for delivery in this state covering Louisiana residents shall contain any condition, stipulation, or agreement requiring that the contract be construed according to the laws of any other state, (except as necessary to meet the requirement of the motor vehicle financial responsibility law of such other state), or contain a condition or stipulation depriving the courts of this state of jurisdiction against the insurer.
Although this action is not against the insurer, this suit seeks recovery by a Louisiana resident on a policy of insurance delivered in Louisiana by a Trust through its administrator, which had the responsibility of providing group health and accident benefits to these Louisiana residents. Indeed, this court looks unfavorably upon an argument (raised by a nonresident provider of insurance to residents of this state) that seeks to circumvent the protective legislative enactments governing non-resident insurers and providers of insurance when those non-residents offer coverage in this *411 state and receive premiums from Louisiana residents.
We are in accord with the decisions of our brothers in the Second Circuit in Johnson v. Nationwide Life Ins. Co., 388 So.2d 464 (La.App. 2nd Cir.1980) and the Third Circuit in Casey v. Prudential Ins. Co. of America, 360 So.2d 1386 (La.App. 3rd Cir. 1978), writ denied 363 So.2d 536 (La.1978), which held insurance policies similar to the one in the instant case to be governed by Louisiana law and not Missouri law.
Accordingly, we hold Louisiana law applies to the instant case.

NOTICE
LSA-R.S. 22:215(A)(3)(g) provides that a certificate of insurance shall disclose the benefits, limitations, exclusions and reductions contained in the policy. See also Greer v. Continental Cas. Co., 347 So.2d 70 (La.App. 2nd Cir.1977).
As a provider of insurance benefits, the Trust and its administrator, in their capacity as agent for both the insurer and the employer, are clothed with the same responsibility of notice required of insurers. Indeed, the communications from the Trust to the employer-beneficiaries informing them of periodic change in underwriters is recognition of this responsibility (and that of the administrator) to inform the beneficiaries regarding coverage. Despite defendants' recognition of that responsibility, they failed to give notice to plaintiff of the diminished benefits for mental health costs.
In the first insurance coverage provided by Hartford Insurance Company, there was no $10,000.00 limitation for psychiatric services. In a May 11, 1973 communication by Eugene M. Strauss, President of SFO, the beneficiaries were advised that the Trust coverage had been transferred to the American Republic Insurance Company. The letter states that members "... will enjoy this extended rate guarantee which, coupled with improvements in the plan, as indicated by the attached brochure, results in the UET becoming an even better insurance program for you and your employees."
In the attached brochure, maximum benefits per disability were provided in the amount of $50,000.00. The maximum lifetime benefit per person was $1,000,000.00. The outline of policy benefits significantly points out also that "inpatient psychiatric treatment [is] covered just as any other disability."
Further, in an undated communication from the vice-president of SFO, the beneficiaries were informed that effective February 1, 1975 Sentry Life Insurance Co. had been named as the insurance underwriter. The communication reads, in pertinent part: "We feel confident that you will notice remarkable improvement in both service and products in the very near future as a result of this change." Further in that letter is the statement: "We feel confident that this move to Sentry Life Insurance Corporation will work to the benefit of all of our UET insureds." The letter further advises that Sentry will assume policy risks of the retiring American Republic Insurance Co. under the same coverage as of February 1, 1975.
When we consider these communications from SFO to the Trust beneficiaries, we cannot say the trial judge erred in concluding that defendants had failed to provide proper notice of the reduction in benefits. We come to this holding despite evidence that the booklet from the insurer furnished to the employer, if examined with utmost scrutiny by the most educated person, discloses the limitation in benefits. This is particularly true when the booklets from various insurers are considered in light of the communications from the administrator of the Trust of the "improvements" in the various plans.
Nor do we conclude that plaintiff, the general manager of Ricca responsible for handling Ricca's insurance, had a greater responsibility to be on notice of the $10,000.00 limitation. Again, the letters from the administrator notifying the employers of the change of underwriters and improvements in the plan reinforced the belief of any reasonable person that the $50,000.00 *412 per disability for physical or mental disorder, as outlined in the brochure, was applicable.

REFORMATION
Because we have concluded, as did the trial judge, that SFO and the Trust breached their duty to plaintiff by failing to provide him with a proper notice of the reduction in benefits under the Sentry policy, we find no necessity to discuss defendants' third contention that plaintiff's sole remedy is against the insurer for reformation of the policy.
Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] The purpose of the Trust was to facilitate the obtaining of group insurance benefits for businesses. The Trust, through its administrator Strauss Fuchs Organization, Inc., procured group health and accident insurance policies from various underwriters for the benefit of the employees of Ricca Demolishing Co. and other employers.
[2] Old Security Insurance Company later replaced Sentry; however, Old Security went into liquidation and is not a party to this suit.
[3] The health and accident benefits under Sentry's policy exceeded the mental illness limitations.