Ruth H. HUNTER, Plaintiff-Appellant,

v.

TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA, Defendant-Appellee.

No. 87–4881
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 24, 1988.

W. Orie Hunter, III, Shreveport, La., for plaintiff-appellant.

Ben Marshall, Jr., Shreveport, La., for defendant-appellee.

Before GEE, GARWOOD, and JONES, Circuit Judges.

GARWOOD, Circuit Judge:

In this Louisiana diversity action for group life insurance policy benefits, plaintiff-appellant Ruth H. Hunter (Mrs. Hunter) appeals the district court's order denying her motion for summary judgment and granting the motion for summary judgment of defendant-appellee Transamerica Occidental Life Insurance Company of California (Transamerica). We affirm.

**Facts and Proceedings Below**

The following facts are not in dispute. Transamerica issued a group life insurance policy to the Clerk of Court in Caddo Parish, Louisiana, that became effective September 1, 1973. The policy was to be renewed annually. Mrs. Hunter's late husband, William Orie Hunter, Jr. (Mr. Hunter), was covered under the policy and was categorized as a Class 3 employee, which entitled him to life insurance protection in the amount of $20,000 (additional protection for death by accidental means, not in issue here, was also afforded). This amount was subject to reduction, explained as follows in the 1973 Certificate and Description brochure furnished the covered employee: "The amounts of your Life Insurance and Accidental Death and Dismemberment Benefits will be reduced by 50% on the later of the effective date of your insurance or *your 65th birthday*." (Emphasis added.)

This "Certificate and Description" brochure was found among Mr. Hunter's possessions after his death. It explained coverage under the policy as it existed on September 1, 1973. The front cover of the brochure stated in pertinent part:

"This is an explanation of your Group Insurance Program and is your certifi-

cate while you are insured. All provisions described are subject to the provisions, definitions, exceptions, and reductions of the policy, which is on file in the Policyholder's office."

The policyholder was identified as the Clerk of Court—Caddo Parish. Mr. Hunter held this position from at least some time in 1981 to the time of his death.

The policy in question was modified on several occasions after 1973. The policy itself, as issued in 1973, described its death benefits as follows:

"LIFE INSURANCE—
    "Amount.......Class 1—$ 5,000.00
                  Class 2—$10,000.00
                  Class 3—$20,000.00

"DEATH AND DISMEMBERMENT BY ACCIDENTAL MEANS—
    "Amount.......Class 1—$ 5,000.00
                  Class 2—$10,000.00
                  Class 3—$20,000.00

"The amounts of Life Insurance and Death and Dismemberment Benefit for each individual shall be reduced by 50% on the later of his effective date of insurance or his *65th birthday*." (Emphasis added.)

By an August 1978 endorsement, the policy death benefit provisions were made to read as follows:

"Scheduled Amounts of Life Insurance and Death and Dismemberment by Accidental Means Benefit

| "CLASS | UNDER AGE 65 | AGE 65 OR OVER |
|---|---|---|
| "1 | $ 5,000.00 | $ 2,500.00 |
| "2 | $ 10,000.00 | $ 5,000.00 |
| "3 | $ 20,000.00 | $ 10,000.00 |

"The changes in Scheduled Amounts due to attained age of the individual will be effective *on the first day of the month in which he attains his 65th birthday*." (Emphasis added.)

It will be noted that this endorsement differs from the original policy in two ways: first, as a matter of form, the fifty percent benefit reduction for those sixty-five or over is not called for by general language following the listing of benefit amounts (as in the original policy), but is rather effected by a separate column listing of the benefit amounts for those of that age; second, and of substantive significance in this case, the change in benefit amounts takes place not on "his 65th birthday," as in the original policy, but rather "on the first day of the month in which he attains his 65th birthday."

A similar policy endorsement, in all material respects the same as that of 1978, was issued by Transamerica in November 1981; Transamerica sent this endorsement to the Clerk and the transmittal was signed "accepted for the policyholder" by Mr. Hunter in December 1981.[1] Also in 1981, at about this time, Transamerica sent to the Clerk of Court—Caddo Parish, a new Certificate and Description brochure containing various changes, including a new benefit reduction explanation which stated: "The amounts of your Life Insurance and Death and Dismemberment Benefit will be reduced by 50% *on the first day of the month in which you become 65 years of age*." (Emphasis added.)

In November 1982, Transamerica issued an endorsement that increased the amount of life insurance protection from $20,000 to $40,000 for Class 3 employees under 65 years of age. The principal amount of protection for those over 65 was increased from $10,000 to $20,000. This 1982 endorsement contained the following provision:

| "CLASS | UNDER AGE 65 | AGE 65 OR OVER |
|---|---|---|
| "1 | $ 5,000.00 | $ 2,500.00 |
| "2 | $ 10,000.00 | $ 5,000.00 |
| "3 | $ 20,000.00 | $ 10,000.00 |

"The changes in Scheduled Amounts due to

1. This 1981 endorsement stated:
   "Scheduled Amounts of Life Insurance and Death and Dismemberment by Accidental Means Benefit

"Scheduled Amounts of Life Insurance and Death and Dismemberment by Accidental Means Benefit

| "CLASS | UNDER AGE 65 | AGE 65 OR OVER |
|--------|--------------|----------------|
| "1 | $ 10,000.00 | $ 5,000.00 |
| "2 | $ 20,000.00 | $ 10,000.00 |
| "3 | $ 40,000.00 | $ 20,000.00 |

"The changes in Scheduled Amounts due to attained age of the individual will be effective *on the first day of the month in which he attains his 65th birthday.*" (Emphasis added.)

Mr. Hunter, as Clerk of Court, was sent this endorsement by Transamerica and he executed a written acceptance of it for the policyholder on December 17, 1982, and the endorsement became part of the policy.

Mr. Hunter died on March 1, 1986. On March 25, 1986, he would have attained sixty-five years of age. On March 7, 1986, Mrs. Hunter filed a claim with Transamerica for benefits in the principal sum of $40,000. Relying on its interpretation of the policy as it existed at the time of Mr. Hunter's death, however, Transamerica reduced the amount of the benefits by fifty percent and thus tendered the remaining $20,000 to Mrs. Hunter.[2]

Mrs. Hunter then filed suit in the First Judicial District Court in Caddo Parish, Louisiana, seeking to collect the remaining $20,000, which she claimed was payable under the terms of the life insurance policy. On June 20, 1986, the case was removed to the federal district court on the basis of diversity jurisdiction.

In the district court, the parties filed competing motions for summary judgment. In her motion, Mrs. Hunter argued that: (1) Transamerica was bound by the reduction provisions contained in the original 1973 brochure that was found among Mr. Hunter's possessions; (2) even if the more recent fifty percent reduction provision is controlling, it requires the payment of the full $40,000 since Mr. Hunter never "attained" his sixty-fifth birthday or "became" sixty-five years of age; and (3) in any event, the new reduction provision is ambiguous and should therefore be construed against the insurer. Transamerica argued that, by virtue of the 1978, 1981, and 1982 changes, the fifty percent reduction clause unambiguously states that benefits would be reduced by fifty percent on the first day of the month in which the insured turned sixty-five years of age and that Mr. Hunter, having, in 1981 and 1982, accepted the new fifty percent reduction clause as the Clerk of Court, was charged with awareness of this particular provision and was bound by its terms.

On November 6, 1986, the district court denied Mrs. Hunter's motion and granted summary judgment in favor of Transamerica. The district court rejected Mrs. Hunter's interpretation of the amended fifty percent reduction provision and found that as amended the provision unambiguously provides that the fifty percent reduction in benefits becomes effective on the first day of the month in which falls the sixty-fifth anniversary of the covered employee's birth. The district court also rejected the argument that Transamerica was bound by the original Certificate and Description brochure found among Mr. Hunter's possessions. With regard to the latter argument, the district court found that: (1) the original brochure that was found among Mr. Hunter's possessions expressly referred the employee to the exclusions and limitations contained in the master policy; (2) a new certificate containing the new fifty percent reduction provision was issued in November 1981; and (3) Mr. Hunter had accepted the new provision on behalf of the policyholder. This appeal followed.

---

attained age of the individual will be effective *on the first day of the month in which he attains his 65th birthday.*" (Emphasis added.)

**2.** Transamerica also indicated in a letter to Mrs. Hunter's attorney that Mr. Hunter's insurance classification had been changed by the policyholder in February 1986, and that Transamerica had been instructed to reduce Mr. Hunter's insurance classification from $40,000 to $20,000 and the premium from $32.40 per month to $16.20 per month, effective March 1, 1986.

## Discussion

### I. Interpreting the New Reduction Provision

■ On appeal, Mrs. Hunter sets forth essentially the same arguments she presented below. She first contends that the district court misinterpreted the amended fifty percent reduction provision, which states that "changes in Scheduled Amounts due to attained age of the individual will be effective on the first day of the month in which he attains his 65th birthday." Mrs. Hunter argues that under the language of this provision, benefits are to be reduced on the first day of the month in which the insured attains his sixty-fifth birthday only if the insured actually "attains" that birthday. According to Mrs. Hunter, a person does not "attain" his sixty-fifth birthday if he does not live to see that day. Thus, she contends that in the present case the fifty percent reduction could have occurred on the first day of the month only if Mr. Hunter had died on or after his March 25, 1986 birthday, in which case the reduction would have taken effect retroactively to March 1, 1986. However, since Mr. Hunter died before his March 25, 1986 birthday, it is argued that he never attained his sixty-fifth birthday and that accordingly the fifty percent reduction provision was not triggered.

The district court found that this interpretation of the provision is too strained, and we agree. Mrs. Hunter's interpretation of the provision renders the "first day of the month" clause meaningless since a reduction would not occur on the first day of the month in which the insured turned sixty-five years of age unless the insured had already turned sixty-five, in which case the benefits would be automatically re-duced anyway. Moreover, it is quite clear that under Mrs. Hunter's interpretation of the new reduction provision, benefits would be reduced only for those who are sixty-five or older.[3] When interpreted in this manner, the new provision is no different from the original 1973 provision under which benefits were reduced on the insured's sixty-fifth birthday. Mrs. Hunter's interpretation thus renders the new provision useless and ineffective.

■ Because we cannot interpret a provision with a meaning that renders it ineffective,[4] we cannot accept Mrs. Hunter's interpretation. Instead, we agree with the district court's conclusion that the reduction provision unambiguously provides that the fifty percent reduction in benefits becomes effective on the first day of the month in which the insured turns sixty-five years of age, and that in this case the reduction took effect on March 1, 1986.[5] Although the Louisiana rule is that insurance policies are generally construed in favor of the insured, this applies "only when there is an ambiguity; courts ought not to strain to find such ambiguities, if, in so doing, they defeat probable intentions of the parties" and "[t]his is so even when the result is an apparently harsh consequence to the insured." *Calcasieu-Marine National Bank of Lake Charles v. American Employers' Insurance Co.*, 533 F.2d 290, 296 (5th Cir.1976) (applying Louisiana law).

### II. Determining Which Reduction Provision Controls

■ Mrs. Hunter further contends that the district court erred in concluding that Transamerica is not bound by the terms of the 1973 Certificate and Description bro-

---

**3.** Indeed, under Mrs. Hunter's interpretation of the new provision, a reduction in benefits could not occur until the day on which the insured turned sixty-five, regardless of whether he died on, before, or after that date.

**4.** *See* La. Civ. Code Ann. art. 2049 (West 1987) (restating the rule of C.C. art. 1951 (1870)). Article 2049 provides in full: "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."

**5.** Under Louisiana law, when a contract is subject to interpretation from the four corners of the instrument, without necessity of extrinsic evidence, interpretation of the contract is a matter of law, *Wilson v. Cost+ Plus of Vivian, Inc.*, 375 So.2d 683, 685 (La.App.1979), and is therefore subject to *de novo* review. *See Chevron U.S.A., Inc. v. Belco Petroleum Corp.*, 755 F.2d 1151, 1153–54 (5th Cir.), *cert. denied*, 474 U.S. 874, 106 S.Ct. 140, 88 L.Ed.2d 140 (1985) (applying Louisiana law).

chure found among Mr. Hunter's possessions. That brochure provides that the fifty percent reduction in benefits would occur "on the later of the effective date of your insurance or your 65th birthday." Relying on *Colvin v. Louisiana Hospital Service, Inc.*, 321 So.2d 416 (La. App.), *writ denied*, 323 So.2d 476 (La. 1975), and LSA–R.S. § 22:176,[6] Mrs. Hunter argues that where the provisions in a certificate of insurance conflict with terms of the master policy, the insurer is bound by the provisions in the certificate. Thus, applying this rule to the present case, she argues that the less restrictive reduction provision in the 1973 certificate must control. In connection with this argument, she also contends that under Louisiana law, Mr. Hunter, who signed for and accepted the new reduction provision on behalf of the policyholder, cannot be charged with knowledge of the new changes in the master policy. We reject these arguments.

Mrs. Hunter acknowledges the dearth of cases interpreting LSA–R.S. § 22:176, but she contends that the rule set forth in *Colvin*, which interprets LSA–R.S. § 22:215, should apply to LSA–R.S. § 22:176. Section 22:215 pertains to group health and accident insurance and states in relevant part (section 22:215 A(1)(a)):

> "The insurer shall issue to the employer or association for delivery to each employee or member insured under such group policy, an individual certificate containing a statement as to the insurance protection to which he is entitled and to whom payable."[7]

The *Colvin* court held that under this statute the insured is not bound by a clause in the master policy if she is not informed by her certificate of insurance or otherwise notified that the master policy contains the provision. 321 So.2d at 418–19. Subsequent cases have also recognized this rule. *See, e.g., Fontenot v. Global Marine, Inc.*, 703 F.2d 867, 872 (5th Cir.1983) ("Under Louisiana law, an insurer may not rely upon a substantial limitation contained in a policy if that limitation is not sufficiently set out in any certificate or abstract of insurance required by statute to be furnished applicant.").

Section 22:215 is somewhat similar to LSA–R.S. § 22:176, and *Colvin* may therefore provide helpful guidance in interpreting that statute. However, Mrs. Hunter's reliance on *Colvin* is misplaced. In *Colvin*, the provision in question was part of a rider that was contained in the master policy but that was never made part of the insured's certificate of insurance. In fact, it was undisputed that the insured was never given notice of the provision. In the present case, however, the new reduction provision was contained in the 1981 Certificate and Description brochure that Transamerica issued as a replacement for the 1973 brochure.[8] Accordingly, the Certifi-

---

**6.** Section 22:176 states in pertinent part:

"Each policy of group life insurance ... shall contain in substance the following provisions....

" ....

"(7) Certificates: A provision that the insurer will issue to the policyholder for delivery to the employee, or member, whose life is insured under such policy, an individual certificate setting forth a statement as to the insurance protection to which he is entitled, to whom payable, together with the provisions concerning conversion rights."

**7.** Mrs. Hunter argues that *Colvin* involves LSA–R.S. § 22:215 A(3)(g). Section 22:215 A(3)(g) states in relevant part:

"The insurer shall furnish to the policyholder for delivery to the insured a certificate of insurance which shall disclose the benefits, limitations, exclusions and reductions contained in the policy and the provisions relating to notice of claim, proof of loss, time of payment of claim and any other relevant information, including the name and address of the insurer."

However, it appears that the *Colvin* court is in fact construing LSA–R.S. § 22:215 A(1)(a), the language of which is quoted in that opinion. Although subsections A(1)(a) and A(3)(g) may contain similar requirements, the more stringent inclusion requirements of subsection A(3)(g) are applicable only to the limited number of "special groups" enumerated in the subsections preceding subsection A(3)(g). *See Fontenot v. Global Marine, Inc.*, 703 F.2d 867, 874 (5th Cir.1983). None of these groups appears to be involved in the present case. Thus, an analogy to subsection A(1)(a), which is a more general statutory provision, seems more appropriate.

**8.** By issuing a new Certificate and Description brochure, Transamerica thus met the requirement of section 22:176 and section 22:215 A(1)(a), both of which require the insurer to

cate and Description in effect prior to Mr. Hunter's death was consistent with the master policy. Moreover, the Certificate and Description containing the provision was sent to the Clerk of Court, who at the time was Mr. Hunter. He also received and accepted the policy endorsement containing this provision. This case therefore differs from *Colvin* in perhaps the most significant way: in this case, the insured had notice of the provision in question and he received both a certificate and a policy endorsement that contained the provision.

■ Nonetheless, Mrs. Hunter contends that under Louisiana law Mr. Hunter cannot be charged with knowledge of the new reduction provision even though in both 1981 and 1982 he received, and signed an acceptance of, the endorsement containing that provision. She relies on *Velez v. Sentry Ins. Co.*, 446 So.2d 408 (La.App.1984), in support of this argument.

In *Velez,* the court held that the insured employee was not bound by a $10,000 maximum benefit limitation provided for in the employer's group insurance policy, even though the insured was the person responsible for handling the group insurance for the employer. But *Velez* is properly distinguished from the present case. In *Velez,* the insurance information given to the employer was confusing and misleading; thus, the court held that the insurer's agents had failed to provide proper notice of the limitation in benefits. *Id.* at 411. The court stated: "We come to this holding despite evidence that the booklet from the insurer furnished to the employer, if examined with utmost scrutiny by the most educated person, discloses the limitation in benefits." *Id.* The court also noted that the correspondence from the insurer's agents notifying the employer of the change of underwriters and improvements in the plan reinforced the belief of any reasonable person that a $50,000 maximum benefit limitation was applicable. *Id.* Thus, *Velez* holds that the covered employee, even though he is the person who handles the employer's group insurance, will not be bound by a

limitation when the insurer or its agent gives the employer, through that employee, confusing and misleading information concerning the limitation.

In the present case, however, there is no evidence that the insurer failed to give proper notice or sent any confusing or misleading information about the provision in question. As we have previously stated, the new reduction provision that was sent to the Clerk of Court clearly and unambiguously states that the fifty percent reduction in benefits becomes effective on the first day of the month in which the insured turns sixty-five years of age. There is no suggestion that Transamerica sent additional information that would cause a reasonable person to believe that the fifty percent reduction would occur on any day other than the first day of that month. Accordingly, the holding in *Velez* does not apply in the present case.

Instead, we think it is clear that Mr. Hunter was given proper notice of the new limitation in the new reduction provision. The clear and unambiguous provision was sent to Mr. Hunter and he signed the acceptance for it on behalf of the policyholder. Accordingly, he is charged with awareness of its terms. We therefore agree with the district court's conclusion and we reject Mrs. Hunter's argument.

## Conclusion

The rulings of the court below on the controlling issues of state law are, of course, due the deference we usually accord a district court's decisions concerning the law of the state in which it sits. *See Edwards v. State Farm Ins. Co.*, 833 F.2d 535, 541 (5th Cir.1987). We fully agree with the district court's conclusion that the new reduction provision controls and unambiguously provides that benefits shall be reduced on the first day of the month in which the insured turns sixty-five years of age. In this case, that date is March 1, 1986. Since there is no genuine issue of material fact, the district court properly

issue to the policyholder for delivery to the employee a certificate setting forth a statement

as to the insurance protection to which the employee is entitled.

granted Transamerica's motion for summary judgment. The judgment is therefore
**AFFIRMED.**