177 So.2d 281

**Eva Lamy LOUBAT et al.**

**v.**

**AUDUBON LIFE INSURANCE COMPANY.**

**No. 47660.**

July 2, 1965.

David W. Robinson of Watson, Blanche, Wilson, Posner & Thibaut, Baton Rouge, for plaintiffs-appellants.

R. Gordon Kean, Jr., of Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, for defendant-appellee.

HAMITER, Justice.

The widow and daughter of Sterling F. Loubat, deceased, brought this suit to recover on a group credit life insurance policy, issued by the defendant Audubon Life Insurance Company in favor of Commercial Securities Company, Inc., by reason of which allegedly the life of the decedent was insured.

The defendant denied that it had covered Loubat's life; and, in a reconventional demand, it sought reformation of a "Statement of Life Insurance Protection" to show that Mrs. Sterling F. Loubat (one of the plaintiffs), rather than the decedent, was the insured.

The district court rendered a judgment dismissing both the main and reconventional demand, and the First Circuit Court of Appeal affirmed it. 170 So.2d 745. We granted certiorari. 247 La. 491, 172 So.2d 295.

The facts giving rise to the litigation are undisputed, the case having been tried on stipulations of fact and the documents attached thereto. They are these: On October 19, 1962 Mrs. Sterling F. Loubat, without any appearance by her husband, purchased a new automobile from Colonial Buick, Inc., a New Orleans dealer. She made a cash down payment; and for the remainder of the purchase price she gave a promissory note which was executed solely by her, payable to the order of herself, and by her endorsed in blank. As security for the note she alone granted a chattel mortgage on the vehicle.

The chattel mortgage expressly authorized the securing of insurance against the contingency of the mortgagor's death; it provided for payment of a stipulated sum for such insurance; and it further recited that the proceeds thereof would be paid to the vendor or its assignee in an amount equal to the balance remaining due when the mortgagor died. As aforeshown Mr. Loubat did not sign the note, chattel mortgage or any of the accompanying documents.

The note and chattel mortgage were assigned by Colonial Buick, Inc. to Commercial Securities Company, Inc. (hereafter referred to as Commercial), on October 23, 1962. While the note itself did not indicate it was endorsed and assigned without recourse, the chattel mortgage identified with such note and the agreed stipulations show that it was so transferred.

At the time of the confection of the above transactions there was in existence and effective a group credit life insurance policy, being "Group Policy No. G 5", issued by the defendant to Commercial. Therein the insurer agreed to pay to Commercial, designated as the "creditor", the amount of insurance in force according to the terms of the policy on proof of the death of any "Debtor, as defined herein" of *Commercial.* The policy further provided that an application was not required for each individual debtor; *that the policy provisions should become effective on the "effec-*

*tive date of the creation of such Debtor's indebtedness, \* \* \*";* that the amount of the insurance on the life of each insured would be equal at all times *to the total amount of his outstanding indebtedness;* and that the coverage would cease upon the termination of the indebtedness to Commercial. Debtors were defined in the policy as "Eligible debtors between the ages of 18 and 65, *who sign both personal and commercial notes* that do not exceed 36 months in duration."

There was no provision in the policy or in law requiring notification to the debtor of the insurance, or that a certificate of the insurance be issued to effect coverage. However, Commercial, on a form furnished to it by the defendant insurer, customarily issued to each of its insured debtors a "Statement of Life Insurance Protection".

Certain documents introduced in evidence indicate that originally it was contemplated that the instant purchase from Colonial Buick, Inc. would be financed through General Motors Acceptance Corporation, and the forms of that company were utilized in effecting the purchase. However, for some reason, not shown by the record, the financing was actually accomplished through Commercial.

After the completed forms were transmitted to the latter company, along with the note and chattel mortgage, the information contained on a "Customer's Statement"

(signed by Mrs. Loubat) was copied onto one of Commercial's own customer statement forms; and in so doing the "Mrs." was dropped and the customer was listed as "Sterling F. Loubat". The latter form was not signed, and it was not shown by whom it was prepared. Consequently, when the "Statement of Life Insurance Protection" was issued by Commercial on the basis of the information in this form it named (and was sent to) Sterling F. Loubat as the debtor and the person insured. However, at the same time an "INSURANCE CHECK SHEET" was also prepared which showed *Mrs.* Sterling F. Loubat as the customer. Further, a form accompanying the draft issued by Commercial to the dealer in payment for the note and mortgage showed Mrs. Sterling F. Loubat as the customer.

There is no evidence as to when Mr. Loubat received the notice of insurance coverage. The stipulations indicate that it was prepared on October 26, 1962; whereas, Mr. Loubat died on November 4, 1962, about nine days later and before any payments were made on the indebtedness.

In asserting that Mr. Loubat was the insured under the policy issued by the defendant the plaintiffs urge that the deceased was the "debtor" within the meaning of the policy, because he was liable for the debt as head and master of the community inasmuch as the indebtedness on the purchase price of the car constituted a community obligation. They further argue that if deceased was not a "debtor" the "Statement of Life Insurance Protection" issued by the defendant through its agent (Commercial), which stated that Mr. Loubat was the insured, constituted a contract of insurance which Audubon is estopped to deny and pursuant to which any defense available under the group policy is deemed waived.

In connection with his judgment dismissing plaintiffs' claim the trial judge gave written reasons therefor as follows: "It is not contended here that plaintiff's deceased husband signed either a personal or a commercial note that came into the ownership of Commercial, and hence he was not a debtor of Commercial under the terms of the policy. It follows, therefore, that by the plain terms of the policy it did not afford life insurance coverage to plaintiff's deceased husband.

"Plaintiff contends, however, that even if the policy by its terms did not afford such coverage, Commercial's action in furnishing to her husband a 'statement of life insurance protection' extended the policy coverage to provide insurance on his life.

"In my opinion Commercial's furnishing this statement to plaintiff's deceased husband had no legal effect whatsoever. The policy did not require that such a statement be furnished to a debtor insured thereunder. It represented nothing more than a business courtesy. Nothing appears to support

plaintiff's contention that Commercial acted as Audubon's agent in that connection, but even if such relationship had existed it is clear from the jurisprudence that the doctrine of waiver or estoppel cannot be invoked to bring within the coverage of a policy of insurance risks not included nor contemplated by its terms. H. D. Foote Lumber Co. v. Svea Fire and Life Insurance Co., 179 La. 779, 155 So. 22; Jacobs v. Metropolitan Life Insurance Co., La. App., 39 So.2d 346.

"By reconventional demand defendant seeks judgment reforming and amending the certificate of credit life insurance (which designates itself as a 'statement of life insurance protection') by changing the name of the insured from that of plaintiff's deceased husband to that of plaintiff.

"As heretofore stated, it is my opinion that the so-called certificate is without legal effect. Furthermore, it is my opinion that from the moment plaintiff became Commercial's debtor the policy here provided credit life insurance coverage to plaintiff herself, and hence the relief sought by defendant is unnecessary."

The Court of Appeal, however, concluded that Commercial did act as defendant's agent and that the "statement" became part of the policy, thereby creating a conflict between the two documents. But it affirmed the judgment dismissing plaintiffs' suit on the theory that the "statement" must be

read in connection with the master policy and that when this is done it is evident that is was not the intention of the insurer and Commercial to insure Mr. Loubat.

■ Our consideration of the case leads us to the conclusion that the reasons assigned by the district court, in answering plaintiffs' contentions, were correct. We have no difficulty in determining that the deceased was not a debtor of Commercial either in contemplation of the policy provisions or in law. The master policy makes it abundantly clear that the insured must be *a debtor of Commercial of a particular class: one who has signed personal or commercial notes which have been acquired by Commercial.* Mr. Loubat signed no notes and clearly would not and could not be Commercial's debtor within the policy's definitions.

■ Neither was he a debtor in law of Commercial, even conceding, arguendo, that such a status would suffice to render him an insured under the policy. Undoubtedly, under express legislative enactments and the jurisprudence of this state, married women may now "obligate themselves personally in any form * * * for the benefit of their husbands or of the community between them and their husbands" (LRS 9:-103); and that by signing a note, even for a community debt, a married woman incurs a personal obligation separate and distinct from the obligation of her husband. How-

ard v. Cardella et ux., 171 La. 921, 132 So. 501, United Life and Accident Insurance Company v. Haley et ux., 178 La. 63, 150 So. 833, C. I. T. Corporation v. Lytle, La. App., 185 So. 115, and Friendly Loans, Inc. v. Morris, La.App., 142 So.2d 810. See also Mathews Bros. v. Bernius, 169 La. 1069, 126 So. 556 and Shell Petroleum Corporation v. Calcasieu Real Estate and Oil Company et al., 185 La. 751, 170 So. 785. Moreover, recently we held in Columbia Finance Corporation v. Robitcheck et al., 243 La. 1084, 150 So.2d 23 that when a note is signed by the wife alone she only is responsible to the assignee thereof, the husband not being liable on the negotiated note even though it was given initially in payment of property purchased for the benefit of the community.

█ We likewise agree with the trial judge that the "Statement of Insurance Protection" sent to Loubat did not constitute a contract of insurance between him and the insurer, and that it in no manner modified any portion of the master policy. On the contrary by its very verbiage it was simply notification to the named person that insurance existed *in accordance with the terms of the master policy.* (For this reason we shall, like the district court, pretermit the question of whether Commercial was acting as agent of the defendant insurer when it issued the statement.)

The cases cited in the Court of Appeal opinion to sustain its conclusion that the notice became a part of the insurance contract are inappropriate. Each of those cases, Corporation of Roman Catholic Church of Eunice v. Royal Insurance Company, Limited, 158 La. 601, 104 So. 383 and LeBlanc v. New Amsterdam Casualty Company et al., 202 La. 857, 13 So.2d 245, involved an ordinary *"rider" which qualified certain conditions of the insurance contract and was attached to the policy* (apparently, incidentally, at the time it was issued). All parties agreed that the *"rider"* formed part of the contract of insurance and the issue involved only a proper interpretation of the rider. [In the Royal Insurance Company case, the rider was attached pursuant to a clause in the main policy which specifically permitted a change in the affected condition by an agreement endorsed on or added to the policy. The court in the LeBlanc case held that the rider had to be read in connection with other policy provisions in order to determine intent.]

█ The last discussed two cases fall within the approved principle that "As a general rule, a rider, slip, or other paper becomes a part of a contract of insurance if properly and sufficiently attached or referred to therein, or if made a part of the body of the instrument, but in order that it may be considered a part of the insurance contract, such a rider or paper must be incorporated, attached, or referred to in the instrument in so clear a manner as to leave

no doubt of the intention of the parties in such respect. * * *

"\* \* \*

"Complete absence or insufficiency of reference in the policy to the attached paper, or vice versa, whereby there can be no certainty that the parties intended the attached paper to become a part of the whole contract of insurance, precludes its inclusion or construction in connection therewith, at least with regard to separate papers physically attached." 29 American Jurisprudence 654–655, verbo Insurance, Section 268.

Certainly, this rule is not applicable to a notice of insurance protection, such as is involved here, which is not referred to in or attached to the policy or·is not required by law. Besides, the instant notice clearly specifies that "The person (*the debtor*) named above *being indebted to*" Commercial "HAS BECOME INSURED *under and subject to the provisions of a policy of Group Life Insurance No. 5 issued by Audubon Life Insurance Company of Baton Rouge* * * *."

Unquestionably, under the terms of the policy and in law, Mrs. Loubat had become the insured immediately upon Commercial's purchase of the note and chattel mortgage

from Colonial Buick, Inc., all in conformity with her agreement authorizing the procuring of insurance on her life. To accept the plaintiffs' argument, as to the result of the statement of insurance protection being thereafter issued in Mr. Loubat's name, would be to effect *a change in* the insured (after the provisions of the policy had become effective) without Mrs. Loubat's consent. Besides, a holding such as plaintiffs seek would be in conflict with the provisions of LRS 22:613, subd. A to the effect that no person may procure insurance upon the life or body of another individual unless the benefits thereof are payable to the insured or his representatives, or to a person having, at the time when such contract was made, an insurable interest in the individual insured.

Our holding is, therefore, that the notice of insurance coverage did not effect a change in the policy provisions—a holding that renders inapplicable here the doctrines of waiver and estoppel. And, since Mrs. Loubat was the insured from the inception of the contractual provisions, it is unnecessary to issue a judgment of reformation as requested in reconvention by the defendant.

For·the reasons assigned the decree of the Court of Appeal is affirmed. All costs shall be paid by plaintiffs.