546 So.2d 335 (1989)
Lawrence G. PUGH, Jr., Plaintiff-Appellee,
v.
The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellant.
No. 88-295.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1989.
Privat & Regan, Kenneth O. Privat Crowley, for plaintiff/appellee.
Plauche, Smith & Nieset, A. Lane Plauche/Charles V. Musso, Jr., Lake Charles, for defendant/appellant.
Before STOKER, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
The Prudential Insurance Company of America (hereafter Prudential) appeals a judgment which found it liable for $52,034.81 to its insured, Lawrence G. Pugh, Jr., under a health and medical expense policy for medical benefits incurred for the treatment of a fractured hip which Pugh received in an automobile accident. The trial court found that Pugh made no material misrepresentations of his medical history, i.e., his treatment for alcohol abuse at various facilities within the last five years, in his application for coverage with an intent to deceive Prudential, that even after becoming aware of Pugh's confinement after the initiation of this policy, and, nevertheless, Prudential failed to cancel the policy until after the automobile accident; it also denied Pugh's claim for penalties and attorney's fees.
Prudential asserts that the trial court erred: (1) in failing to hold that Pugh's misrepresentations in his application of his medical history constituted a material misrepresentation with intent to deceive Prudential; and (2) in failing to hold that the misrepresentation materially affected the risk of Prudential under the policy.
Due to Pugh's death after Prudential perfected this appeal, the administrator of *336 Pugh's succession, Lawrence G. Pugh, III, has been substituted as the proper party plaintiff, and has answered the appeal, seeking an award for penalties and attorney's fees.

FACTS
On July 31, 1985, Glen Hebert, a Prudential agent, took applications for small group medical insurance coverage from Pugh and his legal secretary, Karen Fontenot. The medical history portion of Pugh's application is reproduced herein as follows:

It was not disputed at trial that Pugh had a long history of alcoholism, and that he was admitted to the following institutions for treatment of alcohol abuse: American Legion Hospital in Crowley from 2/1/81 through 2/6/81; Cypress House in Lafayette from 6/31/81 through 7/15/81; American Legion Hospital from 9/3/81 through 9/9/81; Cypress House from 12/3/81 through 12/14/81; and again at American Legion Hospital in Crowley from 7/1/84 through 7/16/84. Although the record is not clear about the exact dates of admission, Pugh was also treated for alcoholism at the Chemical Dependency Unit of Baton Rouge General Hospital, Foundation of Opelousas, and the Veterans Administration Hospital.
Precipitated by a claim for Pugh's treatment at Insight of America for alcohol dependency from 11/6/85 through 12/6/85this claim was never paid by Prudential and does not form part of Pugh's action against Prudentialon April 9, 1986, Jason Meche was employed by Prudential to interview Pugh about his history of alcoholism. At that time Meche filed a written report with Prudential in which Pugh forthrightly explained his treatment for alcoholism at Insight of America, Cypress House, CDU Hospital in Baton Rouge, and psychiatric counseling by Dr. Jimmie Blackburn.
On May 14, 1986, Pugh, who was riding as a guest passenger with a former client of his, was involved in a single car accident en route to Crowley from Lafayette. As a result of the accident, Pugh was eventually diagnosed as suffering a fractured hip. Numerous hospitalizations ensued.
On May 15, 1986, Laurie Mullis, a Prudential claims examiner, mailed a letter to Pugh advising him that had Prudential known of his history of alcoholism, it would not have issued the medical coverage for which he applied. At that time, she advised Pugh that because of these omissions, Prudential considered that there never was a valid insurance contract with him, and that accordingly, it would not honor any claims or accept premiums. At trial Pugh stated that he never received this letter, and that it was not until October 7, 1986, that a copy of this letter was given to him and Prudential tendered his premium payments. Despite the May letter, Prudential continued to accept the premiums.
Ultimately, Prudential's failure to pay the claims for Pugh's fractured hip necessitated the institution of this lawsuit.

*337 ADMISSIBILITY OF APPLICATION
Before reaching Prudential's arguments relative to material misrepresentation, Pugh contends on appeal that the trial court, over his objection, erroneously allowed Prudential to admit his application for insurance into evidence because it was not physically attached to the policy.
LSA-R.S. 22:618 A provides:
"No application for the issuance of any insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a correct copy of the application was attached to or otherwise made a part of the policy, or contract, when issued and delivered...."
It was undisputed at trial that although Prudential left a copy of the application with Pugh, a copy of the application was not attached to the policy as required by R.S. 22:618 A. Prudential contended at trial that the policy involved is a multi-employer trust administered by Prudential which involves the issuance of a master group policy through a trustee bank. Accordingly, the master group policy is held by the trustee bank and the individual insured receives only a copy of his application (given to him at the time the application is taken), together with a certificate of coverage, and a booklet which describes the benefits, not the policy. Therefore Prudential argues that the requirements of LSA-R.S. 22:618 A are inapplicable herein. We disagree.
In Smith v. North American Co. for Life, Acc. & H. Ins., 306 So.2d 751, 755 (La.1975), overruled in part on other grounds in Estate of Borer v. Louisiana Health Service, 398 So.2d 1124 (La.1981), which involved a group credit accident and health insurance policy, the court stated:
"The requirement [of LSA-R.S. 22:618 A] is not satisfied by any clause or provision on the base policy which is not delivered to the insured. The certificate of insurance issued and delivered to Smith is the `policy' as that word is used in the statute ... Nor can a clause in the application itself whereby the applicant acknowledges receipt of a copy of the application before the policy is issued circumvent the requirement that a copy of the application be attached to the policy."
Applying this holding to the case sub judice, it is clear that Prudential should have attached a copy of the application to Pugh's certificate of coverage. Having failed to do so, we find that the trial court erroneously admitted the application of insurance into evidence. "Thus all evidence concerning pre-existing conditions not disclosed in the application which may have resulted ... were improperly considered. Failure to disclose that evidence is not available to the insurer as a defense because a correct copy of the application for insurance was not `attached to or otherwise made a part of the policy.'" Smith, supra at page 754. See McKenzie & Johnson, 15 La.Civil Law Treatise, Insurance Law and Practice, at 542-544.
Accordingly, since Prudential has not urged defenses other than the misrepresentations stated in the application, Estate of Borer, supra, we pretermit Prudential's arguments, and affirm the trial court's judgment on other grounds.

PENALTIES AND ATTORNEY'S FEES
The trial court denied penalties and attorney's fees because Pugh had a history of alcoholism.
Pugh contends in his answer to the appeal that the trial court erred in not awarding him penalties and attorney's fees. We agree.
LSA-R.S. 22:657 A provides in pertinent part:
"A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during *338 that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court."
Even after May 16, 1986, when Prudential purportedly mailed Pugh a letter advising him of the termination of his health insurance coverage, Prudential generated premium notices to Pugh on June 24, 1986, July 25, 1986, August 25, 1986, and September 24, 1986, all of which Pugh promptly paid, and Prudential accepted. Furthermore, despite Prudential's contention that it terminated Pugh's coverage in May of 1986, Pugh obtained preadmission approvals for each of the numerous hospitalizations he had for treatment of his fractured hip.
Moreover, in light of the clear provisions of the statute, requiring the attachment of the application to the policy, and the continued jurisprudential enforcement of Smith, we cannot agree that the insurer, who has premised its defense solely on misrepresentation, had "just and reasonable grounds, such as would put a reasonable and prudent business man on his guard," to decline paying Pugh the policy benefits. Therefore, we shall assess penalties against Prudential double the amount due under the policy together with legal interest thereon beginning thirty days after notice of claim was furnished Prudential, until paid, and reasonable attorney's fees in the sum of $3,000.
For the foregoing reasons, the judgment of the trial court is affirmed as to Prudential's liability under the policy. The trial court's judgment denying Pugh penalties and attorney's fees is reversed and IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of Lawrence G. Pugh, III, as the administrator of the Succession of Lawrence G. Pugh, Jr., in the full sum of $52,034.81 with legal interest thereon beginning September 30, 1986, and attorney's fees in the amount of $3,000. All costs are assessed to Prudential.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.