749 So.2d 610 (1999)
In re the Matter of LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY d/b/a Blue Cross Blue Shield of Louisiana.
No. 98-C-3034.
Supreme Court of Louisiana.
October 19, 1999.
Rehearing Denied November 19, 1999.
*611 Colleen Noel Wertz, Baton Rouge, Counsel for Applicant.
Linda P. Clark, David Robert Kelly, Van R. Mayhall, Jr., Jonas Mark Robinson, Baton Rouge, Counsel for Respondent.
CALOGERO, C.J.[*]
The issue presented in this case is whether La. R.S. 22:215.12, which restricts a health insurer's ability to exclude coverage for losses incurred due to pre-existing condition limitations in health insurance policies, is applicable to individuals who enroll in group plans on or after January 1, 1993, when the group master policy was issued prior to January 1, 1993. La. R.S. 22:215.12, which was adopted in 1992, provides in pertinent part:
Any hospital, health, or medical expense insurance policy, ... health and accident insurance policy, or any other insurance contract of this type, including a group insurance plan ..., which is ... issued ... in this state on or after January 1, 1993, shall not deny, exclude, or limit benefits for a covered individual for losses due to a pre-existing condition incurred more than twelve months following the effective date of the individual's coverage.
La. R.S. 22:215.12 (emphasis added).
For policies that fit within the parameters set-out above, the statute also prohibits the insurer from including a more restrictive definition for a pre-existing condition than the following:
(1) A condition that would have caused an ordinary prudent person to seek medical advice, diagnosis, care or treatment during the twelve months immediately preceding the effective date of coverage.
(2) A condition for which medical advice, diagnosis, care or treatment was recommended or received during the twelve months immediately preceding the effective date of coverage.[1]
Id.
La. R.S. 22:215.12 thus limits an insurer's ability to deny an insured coverage for losses incurred due to a pre-existing condition. The statute accomplishes this in two ways: (1) by defining a pre-existing condition as one "for which medical advice, diagnosis, care or treatment" was received or recommended, or for which an ordinary prudent person would have sought advice, diagnosis, or treatment during the twelve-month period immediately preceding his effective date of coverage, and (2) by limiting the time period during which an insurer can deny coverage for losses even for a condition properly characterized as preexisting, to the twelve-month period immediately following the insured's effective date of coverage. As to both of these restrictions, the policy can contain provisions more favorable to the insured, but not more onerous.
*612 After reviewing the record and the applicable law, we reverse the ruling of the court of appeal and find that La. R.S. 22:215.12 does apply to new enrollees under group health insurance policies issued prior to January 1, 1993, when the effective date of coverage, as evidenced by their individual certificates of insurance, is on or after January 1, 1993.

FACTS AND PROCEDURAL HISTORY
In the course of handling two consumer complaints involving persons insured by Blue Cross/Blue Shield of Louisiana ("Blue Cross"), the Louisiana Department of Insurance ("the Department") discovered that the pre-existing condition exclusion in Blue Cross's policies was at variance with La. R.S. 22:215.12.[2] A letter was sent to Blue Cross on February 17, 1995, directing Blue Cross to (1) correct the policy language, and (2) re-adjudicate any claims that may have been erroneously denied under the policy language that was at variance with La. R.S. 22:215.12. In response, Blue Cross asserted that section 215.12 was not applicable to group master policies that had been issued before January 1, 1993. Therefore, Blue Cross maintained that it would neither revise the certificates of insurance issued to individual enrollees enrolling in group health plans on or after January 1, 1993, nor re-assess any claims that had been denied because of the policies' pre-existing condition limitation not in conformance with La. R.S. 22:215.12.
Following further correspondence and meetings, Blue Cross agreed to amend all group policies issued prior to January 1, 1993 to conform to the requirements of section 215.12, but only as to losses incurred on and after March 9, 1995.[3] However, for certificates of insurance issued between January 1, 1993 and March 9, 1995, Blue Cross refused to apply section 215.12 and requested a hearing before the Commissioner of Insurance. Thus, the only time period at issue in this case is between January 1, 1993, and March 9, 1995.
The parties submitted a joint stipulation of evidence and of facts and sought a declaratory ruling on "the applicability of La. R.S. 22:215.12 to new enrollees under a group policy whose effective date of coverage, pursuant to their certificate of coverage is subsequent to January 1, 1993."
A declaratory ruling was issued on October 6, 1995, by the Insurance Department's Administrative Law Judge ("the Law Judge"), acting on behalf of the Commissioner of Insurance. The Law Judge concluded that "La. R.S. 22:215.12 is applicable to new enrollees whose effective date of coverage is on or after January 1, 1993 even under group master policies issued and delivered before January 1, 1993." In reaching this conclusion, the Law Judge construed the term "policy" in section 22:215.12 to encompass the "certificate of insurance" issued to new enrollees under group master policies. The Law Judge also rejected Blue Cross's argument that the above conclusion would result in a *613 violation of the Insurance Code's anti-discrimination provisions.[4]
On review in the Nineteenth Judicial District Court, the trial court found that regardless of "whether [it utilized] an appellate review or a de novo review, ... the term policy, plan, or contract indicated in [the] statute includes the certificate of insurance," and therefore, upheld the Law Judge's determination.
The court of appeal reversed, and using a de novo standard of review, found that the term "policy" means the "group master policy" and not the "certificate of insurance" issued to the individual insured. In re: The Matter of La. Health Serv. Indem. Co. d/b/a Blue Cross Blue Shield of La., 97-2176 (La.App. 1st Cir. 11/6/98), 723 So.2d 997. The court of appeal expressly refused to apply the principle of statutory construction known as the "doctrine of contemporaneous construction" on the grounds that the agency's construction of the law had not been held for a sufficiently long period of time, and the statute was not ambiguous. Id., p. 6, 723 So.2d at 1000. We granted the Department's writ application to determine whether the court of appeal correctly interpreted La. R.S. 22:215.12 when it reversed the judgment of the district court and the ruling of the Law Judge. In re: The Matter of La. Health Serv. & Indem. Co. d/b/a Blue Cross Blue Shield of La., 98-3034 (La.2/5/99), ___ So.2d ___, 1999 WL 57437.

DISCUSSION
The primary issue in this case is whether the term "policy" found in La. R.S. 22:215.12, which refers to "[a]ny hospital, health, or medical insurance policy..., which is delivered or issued for delivery in this state on or after January 1, 1993," includes the individual certificate of insurance issued to the employee under an employer's group policy. The statutory interpretation of this term is purely a matter of law.
The Law Judge found that the term "policy" encompassed the certificate of insurance. "Judicial review of an adjudication by an administrative governmental agency is a limited review which is governed generally by La. R.S. 49:964(G) of the Louisiana Administrative Procedure Act."[5]Hay v. South Cent. Bell Tel. Co., 475 So.2d 1052, 1055 (La.1985). We have held that this Court "retains its traditional primacy in interpreting constitutional or statutory provisions and in enforcing correct procedures." Hay, 475 So.2d at 1055 (citing Save Ourselves, Inc. v. Louisiana Envtl. Control Comm'n, 452 So.2d 1152 (La.1984)). The parties in this case have stipulated to all of the applicable facts and thus our de novo review is directed to the Law Judge's legal finding.
*614 A group insurance policy is a contract between an insurer and a central entity, e.g., an employer, for the benefit of a group of people that has some relationship to the central entity, e.g., the employees. See Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 7:1, at 7-5 (3d ed. 1998). By its nature, group insurance is a three-party relationship inserting the employer or some other central entity between the insurer and the insured. Id. at 7-7. Members of a group insurance plan are generally not supplied with a complete copy of the master policy either before or after enrollment, but are instead given a certificate of insurance that describes the master policy. Id. § 8:16, at 8-36. This relieves the employer of the obligation of providing the entire policy to each employee. Leonard, Tutrix of Bland v. Continental Assurance. Co., 457 So.2d 751, 754 (La.App. 1st Cir.), writ denied, 460 So.2d 1047 (La.1984). Nevertheless, the relationship between the insurer and the employee is contractual in nature. See Couch, § 8.18, at 8-41.
Some authorities consider the certificate of insurance part of the contract formed between the insured employee and the insurer. See, e.g., Couch § 8.18, at 8-41. Thus, the group policy issued to the employer and the certificate issued to the employee, together, would constitute the contract of insurance between the parties. See id. Furthermore, many courts view the certificate as part of the contract. See id. at 8-40.
The general statute in Louisiana describing group health and accident insurance is La. R.S. 22:215. Section 22:215(A)(1) describes group health and accident insurance as "any policy of health and accident insurance covering more than one person" and provides that "[t]he policy shall be issued to an employer or association... who shall be deemed the policy holder, covering one or more employees of such employer ... or ... association ... for the benefit of persons other than the employer, or the association." That section further provides that "[t]he insurer shall issue to the employer or association for delivery to each employee or member insured under such group policy, an individual certificate containing a statement as to the insurance protection to which he is entitled and to whom payable." La. R.S. 22:215(A)(1)(v). Thus, this statute delineates the differences between a group policy and an individual certificate issued thereunder and clarifies that the two have distinct meanings in our Insurance Code.
Nevertheless, when interpreting provisions of our Insurance Code, Louisiana courts have often construed the terms "policy" and "contract of insurance" to include the certificate of insurance issued to the individual under a group policy. See Smith v. North Am. Co. for Life, Accident, & Health Ins., 306 So.2d 751, 755 (La. 1975) (construing the term "policy" as used in La. R.S. 22:618(A) to include the individual's certificate of coverage issued under a group plan), overruled in part by Borer's Estate v. Louisiana Health Serv. & Indem. Co., 398 So.2d 1124 (La.1981); Pugh v. Prudential Ins. Co. of Am., 546 So.2d 335, 337 (La.App. 3d Cir.1989); Casey v. Prudential Ins. Co. of Am., 360 So.2d 1386, 1390 (La.App. 3d Cir.) (construing the term "insurance contract" as used in La. R.S. 22:269 to include the individual's certificate of insurance), writ denied, 363 So.2d 536 (La.1978); Johnson v. Nationwide Life Ins. Co., 388 So.2d 464, 466 (La.App. 2d Cir.1980); Velez v. Sentry Ins. Co., 446 So.2d 408, 410-11 (La.App. 4th Cir.1984); see also Shrader v. Life Gen. Sec. Ins. Co., 588 So.2d 1309, 1313 (La. App. 2d Cir.1991) (rejecting the insurer's assertion that La. R.S. 22:215.6 did not apply because that statute refers to a replacement "policy" and the insured actually received a certificate of insurance), writ denied, 592 So.2d 1317 (La.1992).
In Smith, we construed the term "policy" to include the individual certificate of insurance under a group health plan. We concluded that the lower courts erred in *615 admitting the insured's application for insurance into evidence where the application was not attached to the certificate of insurance under La. R.S. 22:618(A).[6] We held that "[t]he certificate of insurance issued and delivered to Smith is the `policy' as that word is used in the statute (La. R.S. 22:618 subd. A)" because to hold otherwise would have defeated the purpose of section 22:618(A). Smith, 306 So.2d at 755.
Blue Cross argues that Smith and the other appellate cases cited above are not applicable to the instant case because the issues in those cases pertained to choice of law provisions and rules of evidence as opposed to coverage. Blue Cross argues that Loubat v. Audubon Life Ins. Co., 248 La. 183, 177 So.2d 281 (1965), is the only controlling case on the issue before us because Loubat demonstrates that for purposes of determining an individual's coverage under a group health plan, the provisions in the policy govern, rather than those in the certificate of insurance. Thus, for purposes of determining coverage, the term "policy" does not include the individual's certificate of insurance issued under a group plan.
Blue Cross's reliance on Loubat is misplaced. The Loubat court stated that "the `Statement of Insurance Protection' sent to [decedent] did not constitute a contract of insurance between him and the insurer, and that it in no manner modified any portion of the [group] master policy." Loubat, 177 So.2d at 284. However, the Loubat court was simply stating the obvious based on the facts in that case. Decedent was not covered under the group plan, and thus had no contractual relationship whatsoever with the insurer. Therefore, when the insurer erroneously listed decedent on the Statement of Insurance Protection as the insured, the court simply refused to create an obligation, based on a scrivener's error, where none had been intended by the parties. Furthermore, the Statement of Insurance Protection at issue in Loubat was not a certificate of insurance. Rather, it was a courtesy document intended for information purposes only.
As to the applicability of Smith and the other appellate cases to the instant case, we are unpersuaded by Blue Cross's argument that they are inapplicable because they do not address coverage issues. Although the issue at the forefront of those cases might have been one of choice of law or evidence, the ultimate issue was always one of coverage. See, e.g., Pugh, 546 So.2d at 337; Velez, 446 So.2d at 410-11. Furthermore, we do not cite those cases for the broad proposition that the terms "policy" or "other contract of insurance," when used in our Insurance Code, always include a certificate of insurance issued under a group policy. Rather, Smith and the other cases demonstrate that, when interpreting statutes written to apply to both individual and group plans, terms such as "policy" and "contract of insurance," will sometimes be construed to include a certificate of insurance when to do otherwise would completely thwart the legislature's purpose in enacting the statute. See Smith, 306 So.2d at 754-55.
We note, however, that legislative intent is not the appropriate starting point for statutory interpretation. See Touchard v. Williams, 617 So.2d 885, 888 (La.1993) (quoting Zeringue v. State, Dep't of Pub. Safety, 467 So.2d 1358 (La.App. 5th Cir.1985)). Rather the appropriate starting point is the language of the statute itself. Id. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the statute is applied as written, and no further interpretation may be made in search of legislative intent. See La. Civ.Code art. 9. However, when the language of a statute is susceptible of different meanings, it must be interpreted as having the meaning that *616 best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examining the context in which they occur and the text of the law as a whole. See La. Civ.Code arts. 10, 12. Where a statute is ambiguous or susceptible of two reasonable interpretations, statutory interpretation is necessary. Touchard, 617 So.2d at 887. The construction to be given to legislative acts rests with the judicial branch of government. Touchard, 617 So.2d at 885 (citing State v. Sissons, 292 So.2d 523 (La.1974); Ethyl Corp. v. Collector of Revenue, 351 So.2d 1290 (La.App. 1st Cir.1977)).
Blue Cross argues that La. R.S. 22:215.12 is not ambiguous because a simple reading of the statute demonstrates that it applies only to policies, plans, and contracts rather than to certificates of insurance. We disagree. We conclude that in the context of group health insurance plans, La. R.S. 22:215.22 is ambiguous. The statute expressly states that group insurance plans are included in the provisions of the statute. See La. R.S. 22:215.12 (stating that the statute applies to "any other insurance contract of this type, including a group insurance plan"). However, the statute does not state whether it is the group master policy issued to the employer or the certificate of insurance issued to the individual insured, when issued on or after January 1, 1993, that triggers the mandates of La. R.S. 22:215.12. The statute refers only to the "insurance policy" and "other insurance contract[s] of this type." Nowhere in the text of the statute does one find legislative clarification that "insurance policy" refers only to the "group master policy" held by the employer, as opposed to the certificate of insurance issued to the individual insured. Moreover, the statute's reference to "other insurance contracts of this type" is ambiguous in the context of group health plans. The ambiguity present is further compounded in that the legislature must have known that various Louisiana courts, including this Court, have at times considered a certificate of insurance to be "the policy" in a group health plan. See, e.g., Smith, 306 So.2d at 755. Thus, it is not clear at all that the legislature intended to exclude from La. R.S. 22:215.12 those individuals who, on or after January 1, 1993, enroll in a group plan whose master policy was issued before January 1, 1993. Accordingly, having concluded that this statute is ambiguous as applied to group health plans, an examination of the legislative intent behind La. R.S. 22:215.12 is appropriate.
La. R.S. 22:215.12 limits an insurer's ability to deny coverage to an insured because of a pre-existing condition limitation in the policy. Specifically, the statute prohibits the insurer from denying coverage for losses resulting from a pre-existing condition when those losses are incurred more than twelve months after the effective date of the individual's coverage. The statute also defines a "pre-existing condition" and then prevents the insurer from using a stricter definition in its policy. Thus, La. R.S. 22:215.12 benefits the insured by limiting those conditions that the insurer can classify as "pre-existing" and then, assuming a condition is properly classified as "pre-existing," by limiting the time period that the insurer can deny coverage to the twelve-month period immediately following the individual's effective date of coverage. Surely, the purpose of this statute is to protect the insured and to fill-in gaps in insurance coverage that previously existed because of broad exclusions for pre-existing conditions. Thus, the benefits conferred by this statute are significant.
Given that the legislature's intent was to minimize the gaps in coverage that were created by broad pre-existing limitations, we conclude that the term "policy" or "other contract of insurance" includes the certificate of insurance issued to the individual when used in the context of a group health plan. Thus, the provisions of La. *617 R.S. 22:215.12 apply to individual enrollees issued certificates of insurance on or after January 1, 1993, even when the group policy was issued before January 1, 1993. To hold otherwise would frustrate the legislature's clear intent in enacting the statute. Further, this would allow employers and insurers to circumvent the mandates of La. R.S. 22:215.12 as to newly-enrolled and certificated employees, as long as the pre-January 1, 1993 master policy was in effect. This certainly could not be what the legislature intended.
In support of this conclusion, we note that in La. R.S. 22:215.12, the legislature principally focused on the individual insured's coverage as opposed to the group's coverage under the master policy. The statute reads in pertinent part:
Any ... policy ... or any other insurance contract of this type ... delivered or issued ... on or after January 1, 1993, shall not deny, exclude, or limit benefits for a covered individual for losses due to a preexisting condition incurred more than twelve months following the effective date of the individual's coverage.

La. R.S. 22:215.12 (emphasis added).
The statute's text demonstrates that the protections afforded by this statute were aimed at the individual insured regardless of whether that individual was covered by a group plan or an individual plan. Thus, in the context of a group plan, the individual that the statute aims to protect is the certificated enrollee who obtains coverage on or after January 1, 1993. The legislature surely intended that all insureds receiving individual coverage under a group insurance plan on or after January 1, 1993, be covered by the provisions of La. R.S. 22:215.12, notwithstanding that the group policy was issued before January 1, 1993. Because an individual's effective date of coverage in a group plan is commemorated by the issuance of a "certificate of insurance," that term must have been included in the terms "policy" or "other insurance contract of this type." To hold otherwise, would ignore the clear intent of the statute.
Blue Cross argues that this result will force it to violate the anti-discrimination provisions of the Insurance Code because similarly situated individuals working for the same employer and insured under the same group policy will have two different levels of coverage.[7] An insured who obtains coverage on December 31, 1992, under a group master policy issued before January 1, 1993, would not be entitled to the provisions of La. R.S. 22:215.12 as would an insured under the same plan who enrolls on or after January 1, 1993. Blue Cross argues that there is no evidence that the legislature intended to foster such disparate treatment among insureds under the same group master policy.
This argument is not persuasive given the overwhelming indication of the legislature's intent that this statute apply to new enrollees under group master plans when those enrollees obtain coverage on or after January 1, 1993. We also note that the Insurance Code's anti-discrimination statute, La. R.S. 22:652, has never been applied so as to strike coverage provisions that are mandated by statute. See Jenkins v. CNA Ins. Co., 98-0022 (La.App. 1st Cir. 12/28/98), 726 So.2d 71; Clay v. Argonaut-Southwest Ins. Co., 435 So.2d 525 (La.App. 5th Cir.1983).
For the foregoing reasons, we believe that the most reasonable construction of the statute, in light of its legislative purpose and ambiguous wording, is that the *618 terms "policy" or "any other insurance contract of this type" include certificates of insurance issued under group master policies. To hold otherwise defeats the intent of the legislature.
To reach this conclusion, there is no need to give any deference to the Law Judge's or the Department's interpretation of the statute. Therefore, we find it unnecessary to discuss the doctrine of contemporaneous construction.

CONCLUSION
For group health and accident insurance policies issued by Blue Cross prior to January 1, 1993, the provisions of La. R.S. 22:215.12 apply to new enrollees whose effective date of coverage, pursuant to their individual certificates of insurance, is on or after January 1, 1993.

DECREE
For the reasons stated above, the judgment of the court of appeal is reversed; the judgment of the district court is reinstated.
REVERSED.
VICTORY, J., dissents and assigns reasons.
MARCUS and TRAYLOR, JJ., dissent for reasons assigned by VICTORY, J.
VICTORY, J., dissenting.
I dissent from the majority opinion which holds that La. R.S. 22:215.12[1], which limits pre-existing condition clauses in health insurance policies issued after January 1,1993 to a twelve month period, applies to new enrollees under group health insurance policies issued prior to January 1,1993, whose effective dates of coverage, pursuant to their individual certificates of insurance, are subsequent to January 1,1993. In reaching this decision, the majority has ignored the clear wording of the statute and has assumed the legislative prerogative in obtaining its desired result.
The "policy" referred to in La. R.S. 22:215.12 is the group policy issued to the employer, not the individual certificate issued to the employee, for several reasons. First, the term "policy" has a clearly defined meaning under the law. As recognized by the majority, La. R.S. 22:215, the general statute describing group health and accident insurance, provides that the "policy shall be issued to an employer or association, ..., who shall be deemed the policy holder, covering one or more employees of such employer" and that further "[t]he insurer shall issue to the employer or association for delivery to each employee or member insured under such group policy, an individual certificate containing a statement as to the insurance protection to which he is entitled and to whom payable." La. R.S. 22:215A(1). Clearly, the employees are insured under the policy, which is issued to the employer, and the employees are issued an individual certificate, *619 which is delivered to each employee by the employer. If the group policy and individual certificate were the same. the general statute describing group insurance would not have given them such clearly defined meanings.
Second, under general principles of insurance law, the group policy issued to the employer contains the benefits and exclusions available to the employees; the certificate merely describes the coverage in a general way and relieves the employer of the obligation of providing the entire policy to each employee. Leonard Tutrix of Bland v. Continental Assur. Co., 457 So.2d 751, 754 (La.App. 1st Cir.), writ denied, 460 So.2d 1047 (La.1984); Austin v. Metropolitan Life Ins. Co., 142 So. 337 (La. App. 2 Cir.1932) (holding that the term "policy" within statute providing that the policy along with the applications of the employer and the employee shall contain the entire contract, was the group policy, not the individual certificate of insurance). Accordingly, terms written into a certificate of insurance cannot modify the provisions of the master group policy as it is the terms of the policy that determine coverage. Loubat v. Audubon Life Ins. Co., 248 La. 183, 177 So.2d 281, 284 (La.1965).
In spite of these clear principles, the majority states that "[n]evertheless, when interpreting provisions of our Insurance Code, Louisiana Courts have often construed the terms "policy" and "contract of insurance" to include the certificate of insurance issued to the individuals under a group policy." Maj. Op. at 614 (citing Smith v. North Am. Co. For Life, Accident & Health Ins., 306 So.2d 751, 755 (La. 1975), overruled in part, Estate of Borer v. Louisiana Health Serv. & Indem. Co., 398 So.2d 1124 (La.1981); Pugh v. Prudential Ins. Co. of Am., 546 So.2d 335, 337 (La. App. 3 Cir.1989); Casey v. Prudential Ins. Co. of Am., 360 So.2d 1386, 1390 (La.App. 3 Cir.1978); Johnson v. Nationwide Life Ins. Co., 388 So.2d 464, 466 (La.App. 2 Cir.1980); Velez v. Sentry Ins. Co., 446 So.2d 408, 410-11 (La.App. 4 Cir.1984); Shrader v. Life Gen. Sec. Ins. Co., 588 So.2d 1309, 1313 (La.App. 2 Cir. 1991)).
The language in Smith quoted by the majority that "the certificate of insurance issued and delivered to Smith is the `policy' as that word as used in the statute (La. R.S. 22:618 subd. A)", both explicitly and implicitly, does not apply to La. R.S. 22:215.12. See also Pugh, supra (which involved the same factual and legal basis as Smith.) Because the only document the insured receives under a group policy is the individual certificate of insurance, in Smith we held that the individual's application must be attached to it, and if it is not, the application cannot be admitted into evidence. See Estate of Borer, supra at 1126 (wherein we reaffirmed Smith to the extent that it held that false statements by the insured in the application cannot be used in evidence if the application is not made part of the contract but overruled Smith to the extent that it held that failure to attach the application affected the insurer's right to defend on the basis that coverage is excluded because of a preexisting condition). However, this case has no application to La. R.S. 22:215.12 which mandates the type of benefits that group policies roust provide. Because the policy, which is negotiated between the employer and the insurer, contains the benefits, limitations and exclusions applicable to the insureds, and the certificate of insurance merely describes these benefits and exclusions to the employee, the "policy" is not synonymous with the certificate when interpreting mandatory coverage provisions such as § 22:215.12. The other cases cited by the majority are likewise not dispositive of the issue[2] as even the majority concedes.[3] *620 Because these cases have no application to La. R.S. 22:215.12, the majority's additional argument that the legislature had notice that courts in those cases had considered the certificate to be the policy when drafting La. R.S. 22:215.12 also fails.
Further, the majority's view that the legislative intent was that individuals issued certificates after January 5,1993 under group policies in force prior to January 1, 1993, were to be covered by La. R.S. 22:215.12 is erroneous. For when compared to other sections of La. R.S. 22:215, it becomes clear that the legislature did not intend for § 22:215.12 to cover such individuals. Under these other sections, the legislature provided a specific time limit under which group policies issued prior to the effective date of the statute must comply with the terms of the particular statute.
For example, La. R.S. 22:215.2, which provides for mandatory coverage and continued coverage of physically or mentally handicapped children of the insured for policies issued more than ninety days after July 2, 1973, also provides that policies issued or delivered on or prior to ninety days after July 2, 1973 must be endorsed to include such coverage. La. R.S. 22:215.3, which provides for coverage of vocational technical students under all policies issued more than 90 days following July 31, 1974, and La. R.S. 22:215.4, which provides for coverage of unmarried students under all policies issued more than 90 days following July 31, 1974, also provide that any insurer who has policies in force as of July 31, 1974 has until July 21, 1995 to convert these existing policies to conform to the provisions of those sections. La. R.S. 22:215.11, which provides coverage for mammograms and pap smears, applies to any new policy, contract, program, or health coverage plan issued on or after January 1, 1992 and provides that all such policies in effect prior to that date shall convert to conform on or before the renewal date thereof but in no event later than January 1, 1993. La. R.S. 22:215.11A. Likewise, the provisions of that statute providing coverage for prostate cancer testing apply to all policies issued on and after January 1, 1998, and mandate that all policies in effect prior to that date must convert to conform on or before the renewal date, but no later than January 1, 1998. La. R.S. 22:215.11B. See also La. R.S. 22:215.14 (immunizations), 22:215.15 (ADD and hyperactivity disorders), and 22:215.22 (reconstructive surgery), which provide effective dates by which existing policies must convert to the provisions of these statutes. La. R.S. 22:215.5, which provides for optional coverage for alcoholism and drug abuse, provides that any insurer who has group policies in force as of October 1, 1982 shall convert such existing policies to conform to the provisions of that section on or before the renewal dates of those policies. La. R.S. 22:215.7, containing continuation of coverage options, specifically applies to policies issued or renewed on or after September 9,1983. La. R.S. 22:215.8 mandates that any policy which provides medical and surgical benefits and which is delivered, issued or renewed on or after January 1, 1998 must include coverage for treatment of cleft lip *621 and cleft palate. See also 22:215.20 (coverage for diabetic supplies, equipment and self-management training and education for policies issued or renewed after 1/1/98).[4]
Had the legislature intended for La. R.S. 22:215.12 to apply to group policies in force prior to January 1, 1993, it would have, as it has in the sections cited above, added a provision to say so. The fact that it did not strongly indicates that it did not have such intent.
Further, the legislature could have included the phrase "individual certificates of insurance" in the list of items that are subject to the provisions of § 22:215.12. but it did not.[5] It is a settled rule of statutory construction that when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have easily been included in the statute, is deemed intentional. State Through Dept. Of Public Safety and Corrections, Office of State Police, Riverboat Gaming Div. v. Louisiana Gaming Com'n and Horseshoe Entertainment, 94-1872 (La.5/22/95), 655 So.2d 292, 302.
Finally, the majority's holding results in a possible violation of the Insurance Code's anti-discrimination provisions[6] as it subjects some employees covered under a group insurance policy to more restrictive pre-existing condition time limits that other employees covered under the same group policy. For example, it appears that an employee issued a certificate of insurance in December of 1992 will not be covered for a medical condition in existence for more than one year, while an employee issued a certificate of insurance in January of 1993 will be covered for a condition in existence for more than one year, even though the two employees are insured under the same group insurance policy.
For the foregoing reasons, the provisions of La. R.S. 22:215.12 do not apply to new enrollees under Blue Cross group policies issued prior to January 1, 1993 whose effective dates of coverage, pursuant to their individual certificates of insurance, are between January 1, 1993 and March 9, 1995.[7] Accordingly, I respectfully dissent.
NOTES
[*] Kimball, J., not on panel, recused. Rule IV, Part 2, § 3.
[1] Section 215.12 was repealed in 1997 when the Louisiana version of the federal "HIPPA" law was enacted. See Acts 1997, No. 1138, eff. July 14, 1997 enacting La. R.S. 22:250.1 through 22:250.16.
[2] Blue Cross's policies defined a "pre-existing condition" as one which manifests itself at any time prior to the effective date of the policy. Under La. R.S. 22:215.12, a condition must manifest itself within the twelve-month period immediately preceding the effective date of coverage in order for it to be classified as a pre-existing condition. See La. R.S. 22:215.12(1), (2).
[3] Although Blue Cross did finally agree to apply the Department's interpretation of La. R.S. 22:215.12 prospectively from March 9, 1995, this concession was in actuality no concession at all. Blue Cross acknowledged during oral argument that the statutory requirements of La. R.S. 22:215.12 would apply to all individuals covered under group master policies on the first renewal date of the policies after January 1, 1993. Counsel also noted that most group master policies issued by Blue Cross are issued for a one-year term. Thus, by March 9, 1995, most group master policies issued by Blue Cross prior to January 1, 1993, even those with a twenty-four month term, had been reissued, and thus necessarily had to comply with La. R.S. 22:215.12. Even if Blue Cross had not agreed in March 1995 to comply with the Department's interpretation of the statute, the significant periods at issue would have remained the one-year period following January 1, 1993 (for group master policies with one-year terms issued prior to January 1, 1993), and the two-year period following January 1, 1993 (for group master policies with two-year terms).
[4] La. R.S. 22:652 provides:

No insurer shall make or permit any unfair discrimination in favor of particular individuals or persons, or between insureds or subjects of insurance having substantially like insuring risk, and exposure factors, or expense elements, in the terms or conditions of any insurance contract, or in the rate or amount of premium charged therefor, or in the benefits payable or in any other rights or privileges accruing thereunder. This provision shall not prohibit fair discrimination by a life insurer as between individuals having unequal life expectancies.
[5] La. R.S. 49:964(G), as amended by Acts 1997, No. 128, provides in pertinent part:

G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court....
[6] When Smith was decided, La. R.S. 22:618(A) provided in pertinent part:

No application for the issuance of any insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a correct copy of the application was attached to or otherwise made a part of the policy, or contract when issued and delivered.
[7] La. R.S. 22:652 provides:

No insurer shall make or permit any unfair discrimination in favor of particular individuals or persons, or between insureds or subjects of insurance having substantially like insuring risk, and exposure factors, or expense elements, in the terms or conditions of any insurance contract, or in the rate or amount of premium charged therefor, or in the benefits payable or in any other rights or privileges accruing thereunder. This provision shall not prohibit fair discrimination by a life insurer as between individuals having unequal life expectancies.
[1] La. R.S. 22:215.12, which was adopted in 1992 and repealed in 1997, provides in pertinent part:

Any hospital, health, or medical expense insurance policy, except specified disease, hospital indemnity or other limited, supplemental benefit insurance policies, hospital or medical service contract, employee welfare benefit plan, health and accident insurance policy, or any other insurance contract of this type, including a group insurance plan or self-insurance plan, which is delivered or issued for delivery in this state on or after January 1,1993, shall not deny, exclude or limit benefits for a covered individual for losses due to a preexisting condition incurred more than twelve months following the effective date of the individual's coverage. Any policy, contract or plan subject to the provisions of this Section shall not contain a definition of a preexisting condition more restrictive than the following:
(1) A condition that would have caused an ordinary prudent person to seek medical advice, diagnosis, care or treatment during the twelve months immediately preceding the effective date of coverage.
(2) A condition for which medical advice, diagnosis, care or treatment was recommended or received during the twelve months immediately preceding the effective date of coverage.
(3) A pregnancy existing on the effective date of coverage.
[2] Casey, supra, Velez, supra and Johnson, supra, held only that Louisiana law applied where individual certificates of coverage were issued in Louisiana to Louisiana residents but the group policy was issued in another state. Shrader, supra held that where plaintiff's employer was issued a group policy from one insurer but later joined a multiple employer trust insured by another insurer and was issued a certificate of coverage from the trust, the second policy was a "replacement policy" under La. R.S. 22:215.6, even though the first policy was issued to the employer and the second policy was issued to the trust.
[3] The majority states:

Furthermore, we do not cite those cases for the broad proposition that the terms "policy" or "other contract of insurance," when used in our Insurance Code, always include a certificate of insurance issued under a group policy. Rather, Smith and the other cases demonstrate that, when interpreting statutes written to apply to both individual and group plans, terms such as "policy" and "contract of insurance" will sometimes be construed to include a certificate of insurance when to do otherwise would completely thwart the legislature's purpose in enacting the statute.
Maj. Op. at 615.
[4] Similarly, Acts 1997, No. 1138, which enacted La. R.S. 22:250.1 to 22:250.16 and repealed La. R.S. 22:215.12, specifically provides that the "provisions of this Act shall become effective with respect to health insurance coverage offered, sold, issued, renewed, in effect, or operated in the individual or group market for plan years beginning on or after July 1, 1997...."
[5] The legislature specifically enumerated the types of contracts delivered after January 1, 1993 which would trigger the newly mandated provisions of § 22:215.12 as follows: hospital, health or medical expense insurance policy; hospital or medical service contract; health and accident insurance policy, employee welfare benefit plan; or any other insurance contract of this type, including a group insurance plan and a self-insurance plan. But see § 22:215.13 and 22:216 (repealed by Acts 1997, No. 1138. § 2. eff. July 14, 1997) (defining a "group policy" as a "group accident and health insurance policy or group certificate").
[6] La. R.S. 22:652 provides:

No insurer shall make or permit any unfair discrimination in favor of particular individuals or persons, or between insureds or subjects of insurance having substantially like insuring risk, and exposure factors, or expense elements, in the terms or conditions of any insurance contract, or in the rate or amount of premium charged therefor, or in the benefits payable or in any other rights or privileges accruing thereunder. This provision shall not prohibit fair discrimination by a life insurer as between individuals having unequal life expectancies.
[7] Blue Cross acknowledged at oral argument that the statutory requirements of La. R.S. 22:215.12 would apply to enrollees of group master policies on the first renewal date of the policies after January 1, 1993.